CHARLES A. MORROW AND WILLIAM H. MORROW, Co-Partners, Trading as Morrow Bros., Garnishees of James G. Parlett,

*vs.*

THOMAS A. ARTHUR AND FRANK A. BOYLE ET AL.

*Releases of debts: statute of 13th Elizabeth; solvency of grantor; question for jury; insolvency not to be assumed. Contracts for labor: reference to plans, made part of contract. Exceptions: rulings on evidence and prayers; not to be combined in one exception.*

In a suit between the garnishee of a subcontractor and a general contractor, where the question arises whether certain tunnels were covered by the contract with the subcontractor in his employment to do "landscape work and grading," the jury may be shown the sheets and plans referred to in the contract to see if the tunnels were marked upon them; but the better and proper plan is to have the architect testify who had prepared the plans and who could explain them.                    p. 187

The fact that an interrogatory put to witness misstated the contents of a letter that was in evidence, presents no reversible error where the jury had the letter itself before them and no hurt could have been done.                    p. 188

Where the "tunnels and fanroom" were not on the plans and sheets, for work that was furnished the contractor and made part of his contract for landscape work and grading, digging tunnels is not to be taken as "other kind of grading."      p. 188

An exception should not embrace a ruling on a motion to strike out evidence and also a ruling on a prayer.      p. 191

But in such a case the ruling on the prayer may sometimes still be considered.      p. 191

A voluntary conveyance is *prima facie* invalid as against existing creditors, without regard to the actual intent of the grantor, when he has not sufficient means to pay his debts.      p. 194

In such a case the burden of proof is on the party claiming under such an instrument to show that the debtor had property sufficient to pay his debts.      p. 194

Whether or not the debtor had at the time sufficient such property is a question of fact to be submitted to the jury, and the fact of his then insolvency should not be assumed in a prayer.      p. 194

Where a release has its origin in fraud or what the law deems to be a fraud, the fact that it is under seal is immaterial.      p. 192

The Statute of 13th Elizabeth applies to releases of debts.      p. 194

But a release that is *bona fide* and is a fair settlement of the controversy between the parties, can not be said to be a voluntary conveyance so as to be void against creditors, in the absence of fraudulent intent.      p. 195

*Decided March 6th, 1919.*

Appeal from the Superior Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Edward M. Hammond* and *Harry E. Karr* (with whom were *Benson & Karr* on the brief), for the appellants.

*Philip B. Perlman* (with whom were *Ritchie, Janney & Stuart* on the brief), for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The parties to this suit were before us in the case reported as *Arthur* v. *Morrow Brothers* in 131 Md. 59. The judgment in favor of Morrow Brothers was then reversed and a new trial awarded. The present record contains twenty-six bills of exception involving the rulings of the Court on the admissibility of evidence and one containing the rulings on the prayers and a motion to strike out some evidence. The plaintiffs offered nine prayers, all of which excepting the eighth were granted, and the defendant offered three, the first and second of which were granted as offered and the third was granted as modified. The plaintiffs' first was granted in connection with the defendants' second and their fifth was granted in connection with the defendants' second and third. The defendants' second was granted in connection with the plaintiffs' first and fifth. Special exceptions by the defendants to the plaintiffs' prayers were also overruled. The trial resulted in a verdict for the plaintiffs for $4,409.05 against the appellees as garnishees of James G. Parlett, against whom the plaintiffs had a judgment for the above amount, and laid an attachment in the hands of the appellees.

Morrow Brothers were the general contractors for the erection of the State Normal School building near Towson and made a contract in writing with James G. Parlett to do certain work in connection with it. Parlett made a sub-contract with Carroza Brothers and Company, which is also spoken of in the record as an assignment, and the latter entered into a sub-contract with Arthur and Boyle. The contract between Morrow Brothers and Parlett was dated the 6th of October,

1913, and by it Parlett agreed to construct, finish and deliver
to Morrow Brothers "all the 'grading and landscape work'
required for the construction and completion of the Mary-
land State Normal School * * * in conformity with the draw-
ings and pages 2 to 18, inclusive, of the specifications and
bulletin No. 1 made by Parker, Thomas & Rice, architects
(which drawings consisting of sheets 1, 2, 3, 4, 5, 6 and 7
and specifications are hereby made a part of this agreement),"
etc.   Parlett also agreed to fully complete "(*a*) All work act-
ually upon and between the sites of the two buildings and for
a space of thirty feet away from all outside walls of both
buildings by February 15th, 1914 (with the exception of the
filling in space of ten feet from walls, as noted on page 13
of the specifications, which is to be done as therein men-
tioned) ; (*b*) All work by March 30, 1914."

The appellants offered in evidence a letter dated Novem-
ber 12, 1913, from Morrow Brothers to Parlett which is as
follows:

> "This is to confirm verbal agreement entered into
> under date of November 11th, that the sum of Six
> Hundred and Sixty-six Dollars and Sixty-seven Cents
> ($666.67) for excavating in tunnels, is to be added to
> the total amount of your contract for the Grading,
> Excavations, etc., for the Administration Building of
> the Maryland State Normal School near Towson, Md.
>
> "It is also agreed that should ledge rock be encoun-
> tered in said excavating for tunnels, you are to be
> allowed as extra the sum of Ninety Cents (90c.) per
> cubic yard, for removing all ledge-rock excavations in
> said tunnels."

That letter was written the day after a conference between
Parlett, Mr. A. T. Carroza and Morrow Brothers in an effort
to settle a question which had been raised about the tunnels.
It was after the contract had been assigned or sub-let to
Carroza.   Parlett testified that he never agreed to the terms
set out in that letter, which the appellants claim was a modi-
fication of the contract of October 6, 1913.   Mr. Carroza's

evidence on the subject was as follows: "Q. Mr. Parlett testified you were present at the conference at Morrow Bros.' office November 11, 1913? A. I was. Q. State what took place at that conference? A. That letter sets forth exactly what took place; the contents of that letter show actually what took place in the office of Morrow Bros. that day. Q. I will read it (reading); that is what was agreed to? A. Yes, sir. Q. That was to be added to the main contract of $44,500? A. No; I can not say that; it was as an extra compensation. Q. To the main contract? A. Yes, sir."

Carroza testified emphatically that Carroza Brothers & Company did not agree to do any tunnel work and that their contract with Parlett did not embrace such work. Frank J. Boyle, Parlett and L. B. Williams, engineer for Arthur & Boyle, testified that Charles Morrow asked Boyle what he would do the tunnel work for and he told him two dollars a cubic yard, and after some conversation he told Parlett to give Boyle an order to go ahead which his firm did and removed 3,150 cubic yards in doing so, for which he was paid $1,890.95, leaving a balance of $4,409.05. Morrow denied that he had made any such contract but insisted that he was simply urging Parlett to go ahead with the work under his contract. It is not denied that Arthur & Boyle did the work on the tunnels. Carroza Brothers & Company did not contract with Arthur and Boyle to do that work, as they contended and still contend that their contract with Parlett did not call for the work on the tunnels.

The evidence is conflicting, but it seems to be clear that Morrow Brothers have not paid for the tunnel work in full, but they claim that it was embraced in the contract with Parlett and that a release executed by him was in full for everything. The written contract seems to definitely point out what Parlett was to do as will be seen from what we have quoted above from it. When Mr. Towne, supervising architect for Parker, Thomas and Rice was on the stand he was asked whether their sheets and plans 1 to 7, inclusive, and bulletin No. 1 include the tunnels and fan room. That was

objected to but he was permitted to answer and said: "The tunnels are not shown on those particular ones mentioned on the landscape and grading." That is the first exception and we can see no possible objection to that evidence. He was representing the architects and there were two sets of drawings—one set was known as the "grading and landscape" set, and the other as the building or construction sheets. Parlett's contract was in reference to "grading and landscaping" and only the one set was made part of that agreement. Possibly the jury could have looked at the sheets 1 to 7 of the grading and landscaping set and have determined whether the tunnels were shown on them, but the better and proper way was to ask the architect who was familiar with them, had them before the jury and could explain them, if necessary.

The second exception was waived. We have no doubt about the propriety of the question asked Mr. Boyle in the third exception. He was asked whether he did the work, but that was objected to. None of that line of testimony would be relevant or admissible if the appellees' contention be not correct, but surely if it is correct there can be no doubt about it, unless affected by the release which we will refer to later. Inasmuch as the terms of the contract, such as "grading and landscaping," etc., seems to require some explanation we said in the former opinion, that oral evidence was admissible, but it may well be questioned whether there is any legally sufficient evidence to show that the original contract did include the tunnels and the fan room. In the first appeal Morrow Brothers offered no evidence on the subject and there is certainly very little, if any, evidence in this record to sustain their contention. Parlett was asked in the fourth exception about the arrangement with Boyle to dig the tunnels and was then asked: "Was that the only contract you had with Morrow Brothers for digging the tunnels?" We see no objection to that. He claims that the written contract did not include it and there was ample evidence to support that contention, but it was necessary to prove the contract or agreement under which it was done, if it was not covered by the written con-

tract. No possible injury was done by the question in the fifth exception. The letter in question was there and even if the interrogatory incorrectly stated its contents, the jury had the letter before them and no hurt could have been done. There can be no valid objection to the question in the sixth exception. The witness had the right to explain the circumstances under which the letter was written. The seventh, eighth and ninth were also admissible.

The tenth exception was taken to the refusal of the Court "to strike out all the testimony of Messrs. Boyle, Parlett and Williams tending to show anything with reference to any new contract for the tunnels." That ruling was correct. The theory of the appellants was that Parlett was bound to dig the tunnels and prepare the fan room under the original contract. The appellees took the opposite view. It is clear that the contract of October 6, 1913, did not in terms include the tunnelling referred to and what we have already said indicates our views about it. As we have seen, the tunnels did not appear on sheets 1, 2, 3, 4, 5, 6 and 7 and the specifications made part of the agreement. As there were two sets of plans there was no reason why Parlett should be governed by the set which was not used in connection with "Grading and Landscape." The only evidence in the record which could at all support the theory of the appellants was a question propounded to Mr. Towne by their attorney, which was: "I would like to ask the witness, is not digging a tunnel or foundation grading the same as any other kind of grading?", to which he answered "Yes, sir." If the witness is correctly reported in the record, it would seem to be a most remarkable answer, if intended to apply to the circumstances proven. To say that digging a tunnel or foundation is grading like any other kind of grading certainly is not in accordance with what people generally would understand to be grading, but if that be possible in any case it could not be when there is a set of plans showing what the grading and landscape work was intended to be as there is here. The witness then testi-

fied that "these other plans," referring to the seven sheets,
"are in reference to the grading and landscaping and do not
include the building in those particular sheets and that the
tunnels and fan room are shown on the building plans and
specifications." The question was not whether any tunnels
and a fan room were shown on the building plans, but
whether they were on the plans made part of the agreement
for grading and landscaping which Morrow Brothers made
with Parlett. Mr. Towne said that the tunnels were under-
neath the buildings and the fan room was for the ventilating
fan, that the tunnels were below the basement floor, and in
answer to the question: "Did the grading and landscaping
call for (to) go below the basement floor on those first sheets
you mention?", he said, "I should say just about to the base-
ment floor." He then testified that the tunnels and fan room
were beneath the basement floor and the work on the same
was done by someone and was accepted by the architect on
behalf of the State.

The eleventh, twelfth and thirteenth exceptions were to the
introduction of certain letters notifying Morrow Brothers, in
one of them, that Arthur and Boyle were having difficulty
with Carroza Bros. & Company about payment for work done
by them under their sub-contract, and notifying them to
retain enough money to hold them harmless and in the others
to retain in their hands money due Parlett. They were not
very material, but could not have done any possible harm.
No reference is made in the brief to the fourteenth and we
suppose that was abandoned, as the fifteenth was. In the
fifteenth, Mr. Purdum, secretary and treasurer of the com-
mission representing the State in the work, was called by
the plaintiffs in rebuttal. He was asked: "On Cross-Exam-
ination Mr. Morrow stated that the tunnels and fan room
had never been abandoned from the time of the signing of
the contract until they were finally dug and completed;
please state whether they were ever abandoned during that
period?" That was objected to, the objection overruled and

the witness answered: "They were." He was then, over the objection of the appellants, permitted to state the circumstances under which the work was finally done. That was the sixteenth exception. The witness explained that it was found that so much rock was in the excavations and it was becoming so expensive that the Commission decided "they had better carry all their service pipes, water, electric-light conduits, ventilating pipes, etc., all in the ceiling of the corridors of the building rather than put them down as originally planned in tunnels under the building where it was best, of course, to carry them; then after that had been fully decided Mr. Morrow said it would in a measure spoil the appearance of the building to have all the service pipes carried in the ceiling of the corridors and that it would not make a job, that he as a reputable contractor would be proud of; he said cannot we go back to the original plan for the tunnels and have the service pipes all included in the tunnel; so we asked Mr. Morrow to make a proposition to us for a lump sum for the job, what he would do this job for, as being outside of the contract entirely * * *." The garnishees then made a motion to strike out all of the testimony of the witness so far as it related to any contract between the State and Morrow Brothers, and the Court said: "I grant the motion, limiting it to that." We do not find any error in that of which the garnishees can justly complain. Possibly the plaintiffs could have complained, as it would have been material to prove, if they could, that Morrow Brothers had really done the work under a separate contract, and that was apparently what the witness was leading up to. The eighteenth and nineteenth exceptions were abandoned. The question was asked Parlett: "At the time of the signing of this release, did your *bona fide* claim against Morrow Brothers for landscaping and grading work amount in excess of $11,500 exclusive of the tunnels?" That was objected to and the ruling constituted the twentieth exception. He answered "Yes, sir." We referred to that release at length in 131 Md. and held

that Parlett could not release an indebtedness due him to the
prejudice of his creditors.   One of the disputed questions
was whether the release was intended to or did include com-
pensation for the tunnels.   This question was doubtless in-
tended to reflect upon that, for if Morrow Brothers owed
him more than the amount named, exclusive of the tunnels,
it was less probable that he would have released for the tun-
nels, and if they owed him less than that amount, exclusive
of the tunnels, it would tend to show that the tunnels were
included.   The questions in the twenty-first to twenty-sixth
exceptions inclusive were intended to show Parlett's finan-
cial condition at the time of the release.   We find no rever-
sible error in any of the foregoing exceptions involving the
admissibility of evidence.

As shown above, the last (27th) exception embraces a
motion to strike out certain evidence and the rulings on the
prayers.   We have so often disapproved of that form of a
bill of exceptions, after giving warning that the practice must
not be continued (*Tall* v. *Steam Packet Co.,* 90 Md. 248, and
*Junkins* v. *Sullivan,* 110 Md. 539) that we have sometimes
been inclined to refuse to review any questions presented by
such a bill, but as in *B & O. R. R. Co.* v. *Rueter,* 114 Md. 687,
where there were included in one bill of exceptions rulings
on motions to strike out evidence and also those on the pray-
ers, we reviewed the rulings on the prayers and refused to
consider those on the motions, we will adopt that course in
this case.   As the ruling on the motion to strike out the evi-
dence of the same witnesses was made at the conclusion of
the plaintiff's testimony and presented by the tenth bill of
exceptions the appellants actually lose nothing by the course
we adopt, but there may be cases where it would be very
material, and hence we again refer to the numerous occasions
on which we have referred to the correct practice beginning
as early as *Ellicott* v. *Martin,* 6 Md. 509, and including *Ham-
ilton* v. *Hamilton,* 131 Md. 508.

We will now consider the rulings on the prayers. We do not understand the object of the plaintiffs offering so many prayers, for, as we often find, when there are so many, it is difficult to avoid conflicts between them and there are likely to be omissions in one which were included in another. For example, the plaintiffs' fourth and sixth prayers are alike— practically in the same language—excepting that in the sixth the jury was further required to find that Parlett "was insolvent and unable to pay his debts at the time of its execution" (referring to the release), while all reference to that question was omitted in the fourth. So in regard to the fifth and seventh, the seventh required the jury to find the facts stated "at a time when James G. Parlett was insolvent and unable to pay his debts," but there was no such requirement in the fifth. Manifestly, then, if it was necessary for the jury to find that Parlett was insolvent or unable to pay his debts in order to make valid the prayers on the questions submitted by them, the fourth and fifth were bad and should have been rejected.

As all of the prayers of the plaintiffs', excepting the second and possibly the ninth, necessarily involved the question whether it was necessary to submit to the jury the insolvency *vel non* of Parlett, or his inability to pay his debts, we will at once determine that. In the former opinion we said: "We are, therefore, of the opinion that under the evidence the release did not apply to the contract for tunneling, and hence the fact that it was under seal can make no difference." That was said in answer to the claim of Morrow Brothers that they were released from the sum due because the release was under seal, and we also said that if the release had its origin in fraud, or what the law deems fraud, it would make no difference that it was under seal. We further held that no part of the $11,500 mentioned in the release and in the Memorandum of Agreement was paid for tunneling, but that the whole of that sum was due by Morrow Brothers to Parlett and Carroza Brothers Company for grad-

ing and "tunneling"—as stated on page 65 of 131 Md., but
it is evident from other parts of the opinion that "landscap-
ing" was intended, instead of "tunneling". As the case then
stood (neither of the Morrow Brothers having testified and
they not having called any witnesses) those matters were too
clearly shown to admit of any controversy. We said that
oral evidence was admissible under the issues, and in the
present appeal the record discloses that evidence was offered
on both sides. In the former opinion we also stated that "if
the release had included this fund, then it would have been
null and void and of no effect as against the appellants'
(Arthur & Boyle) or other creditors of Parlett. He testified
that he had no means with which to pay this judgment, and
it was in effect conceded at the argument that he was insolv-
ent," but there is no such evidence in this record and it was
not only not conceded at this trial, but one of the special
exceptions to the sixth prayer was that there was no legally
sufficient evidence from which the jury could find that Par-
lett was insolvent and unable to pay his debts. We were, of
course, speaking of the facts as presented by that record.

There were distinct and conflicting contentions by the
parties. Morrow Brothers contended that the original con-
tract as modified by the alleged modification of it as set out
in the letter of November 12, 1913, and recognized by Par-
lett, as they claim, in the receipt by Parlett, statements of
their accounts and other evidence—particularly the letter of
Morrow Brothers to Parlett of April 22, 1914, calling upon
him to proceed with the excavation of tunnels, etc., and the
letter of the same date of Parlett to Carroza Bros. & Co., in
which he told them that, "In reply to yours received this
A. M. would state that the tunnels are to be dug according
to the contract and are to be done at once. Please let me
know if you can start this work at once, and oblige," etc.—
required Parlett to make the tunnels, etc. On the other hand,
Parlett claimed that the work for the tunnels and fan room
was not included in the above, but was done by Arthur &

Boyle under the agreement or arrangement spoken of above, and was independent of the original contract between him and Morrow Brothers and modification of it. It can not be doubted that when the release was executed there was this controversy between them, and there is evidence on the part of Morrow Brothers tending to show that the release was intended to cover the tunnels, while that on the part of Parlett is to the contrary. Under this record there is something to be said for both sides. It was therefore proper to submit to the jury the question whether the release was for a consideration and *bona fide.* We said in the case between these parties in 131 Md., on page 68, that "A voluntary conveyance is *prima facie* invalid as against existing creditors of the grantor who has no sufficient means to pay his debts, independent of that conveyed, without regard to his actual intent or to that of the grantee." We also there announced the familiar principle that the burden is on the party claiming under such a conveyance to prove that a debtor had sufficient property to pay his debts, and held that the Statute of 13th Elizabeth is applicable to a release of debts. If the release was *bona fide* and a fair and just settlement of their controversies, it could not be said to be a voluntary instrument within the meaning of the authorities. The defendants' second prayer in effect covered that. But if the jury found that it was without consideration, it did not necessarily follow that the result was to hinder, delay and defraud Parlett's creditors and was of no effect as to the plaintiffs as the third prayer instructed the jury. The fourth prayer also required the jury to find that the release was not *bona fide,* but the third did not even do that.

It is not enough to show that a conveyance is voluntary, but the question of the ability of the grantor to pay his debts must be submitted. Upon whom the burden rests may depend upon circumstances, as is illustrated by *Fuller* v. *Brewster & Co.,* 53 Md. 358, where the deed was valid upon its face, and it was held that the burden was upon the creditors to show that it was not made upon a good consideration, or

was made with a fraudulent intent to hinder, delay or defraud the grantor's creditors, and that the intent was known to or participated in by the grantee. In this case the evidence on the subject would tend to show that Parlett had other property when the release was given—there is at least none to show that he did not have any.

We do not find any reversible error in granting the plaintiffs' first prayer in connection with the defendants' second. The second was also properly granted. The third, fourth and fifth should not have been granted. We see no special objection to the sixth and seventh, but it would be better to strike out the words "insolvent and." It might avoid a misapprehension, if the jury was further instructed as to what would be a sufficient consideration. If there was a *bona fide* settlement of the disputes between them and the release was intended to cover that, we are not prepared to say it would not be a sufficient consideration in the absence of evidence to show an intent to hinder, delay or defraud the creditors. The ninth prayer was too broad. It made no reference to the release. Even if there was a contract independent of and not related to the one of October 6, 1913, if the release was *bona fide* and for a sufficient consideration, it could not be ignored. We do not see any particular objection to the modification of the defendants' third prayer. We will not undertake to discuss the special exceptions to the plaintiffs' prayers, and what we have said is sufficient to indicate our views.

It follows that the judgment must be reversed.

> *Judgment reversed and a new trial awarded; the appellees to pay the costs.*