ARAVANIS *v.* EISENBERG ET UX.

[No. 113, September Term, 1964.]

*Decided January 5, 1965.*

*Motion for rehearing filed January 28, 1965, denied February 4, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, SYBERT and OPPENHEIMER, JJ.

*Karl G. Feissner* and *Stedman Prescott, Jr.,* with whom were *Alpern & Feissner* on the brief, for the appellant.

*Charles E. Channing, Jr.,* for the appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

This case involves the duties of property owners to a fireman seriously injured while fighting a fire upon their premises and the rights of a fireman at common law and under the Montgomery County Fire Prevention Code. The plaintiff-appellant sued in the Circuit Court for Montgomery County but an affidavit of removal was filed by the defendants, and the trial took place in the Superior Court of Baltimore City. At the conclusion of the testimony, the trial judge denied motions for directed verdicts requested by the plaintiff and the defendants. The jury returned a verdict for the defendants, and the plaintiff has appealed from the judgment on that verdict. He contends that his motion for a directed verdict against the defendants should have been granted, and that the trial judge erred in refusing certain prayers requested by the plaintiff and in the charge to the jury. He also contends that the trial judge committed prejudicial errors in his rulings in connection with the plaintiff's interrogatories and exceptions thereto and in permitting some testimony to be admitted over objection.

The basic facts were succinctly summarized by Judge Prendergast in his charge to the jury, as follows:

> "The plaintiff seeks to recover damages for personal injuries which he sustained in the course of fighting a fire at the home of the defendants located at

8337 Grubb Road in Silver Spring, Maryland, late in the afternoon of May 22, 1962. Philip J. Aravanis, the plaintiff, was a professional fireman serving as a member of one of the companies of the Silver Spring Fire Department. His company, along with others, had responded to a fire alarm which had been given by Mrs. Diane U. Eisenberg, one of the defendants, after her husband, Lloyd A. Eisenberg, told her there was a fire in the basement of their home and directed her to telephone the alarm. Mrs. Eisenberg did so by calling the operator, who in turn relayed the alarm to the Fire Department. The firemen responded within a matter of minutes and went about their duties of extinguishing the fire.

"Mr. Aravanis was in the basement where the fire was concentrated and using a hose charged with water in an effort to extinguish flames which he had observed in the ceiling through the smoke. Suddenly, according to some of the witnesses, there was a flash and plaintiff was severely burned over large parts of his body. Other firemen came to his rescue, dragged him outside the building, and he was taken by ambulance to a hospital where he remained for a considerable period of time. It is for the injuries thus sustained that he brings this suit charging that the defendants were guilty of negligence which brought about the injuries.

"There appears to be no dispute as to the cause of the fire in this case. The defendant, Lloyd A. Eisenberg, in some fashion brushed or knocked a tool off his work bench, causing it to fall down onto a jug containing acetone, which then burst and its contents spilled out on the basement floor. The acetone almost immediately came in contact with the flame of the pilot light of the hot-water heater nearby and ignited. Eisenberg's efforts to extinguish the blaze were unsuccessful and the fire spread to the ceiling and adjoining parts of his house."

Lloyd Eisenberg is a podiatrist. At the time of the fire, he was on active duty as a podiatrist in the Air Force. He had begun to equip a professional office in the basement of his home, where the fire occurred, for the private practice of his profession. The basement contained the professional offices, recreation, utility, laundry rooms, and two hallways. The upper floor of the house was used for the family living quarters.

We shall first consider the trial judge's charge in the light of the obligations of the defendants-appellees towards the appellant at common law, then the impact of the county fire prevention code, the trial court's rulings in connection with the interrogatories, and finally, the questions raised as to the court's rulings on evidentiary matters.

## I

The obligations owed by a property owner to a fireman who comes to the premises in the performance of his duties have been extensively considered in cases throughout the country, by the writers of legal treatises, in law reviews and by the American Law Institute. In general, the fireman has been held to be only a licensee. *Steinwedel v. Hilbert*, 149 Md. 121, 131 Atl. 44 (1925); Prosser, *Law of Torts*, §61 (3d ed. 1964); Note, 47 Cornell L. Q. 119 (1961). In some jurisdictions there has been a change in the legal principles held applicable; almost thirty years ago, Chief Judge Bond, in delivering this Court's opinion in *Steinwedel v. Hilbert, supra,* referred to the re-examination of the legal rules even then taking place. The subject is one in which the law is developing by way of intensive analysis and modification of the applications of rigid concepts in the light of the particular circumstances involved. The criticism of what was formerly the almost universal rule is based essentially upon making the determination of what is justice between the parties depend upon cramming firemen into the inflexible legal category of licensee. Property owners owe licensees only the duties of abstaining from wilful or wanton injury and entrapment. *Levine v. Miller*, 218 Md. 74, 78-79, 145 A. 2d 418 (1958); *Crown Cork and Seal Co. v. Kane,* 213 Md. 152, 157, 131 A. 2d 470 (1957). If a fireman is to be regarded as an invitee, the property owner owes him a duty

to see that the premises are reasonably safe and to warn him of any dangerous condition known, or which reasonably should have been known to the property owner but not to the fireman. *Nalee, Inc. v. Jacobs,* 228 Md. 525, 529, 180 A. 2d 677 (1962); *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 95 A. 2d 867 (1953).

Illinois has held that the common-law rule labelling firemen as only licensees is not to be perpetuated. *Dini v. Naiditch,* 20 Ill. 2d 406, 170 N. E. 2d 881 (1960). In that case, the defendants were owners and lessees of a four-story building, the first story of which was used by the owners as a store; the upper floors were used by the lessee as a hotel. Firemen were called to extinguish a fire in the premises. During the fire, a stairway collapsed, killing one of the firemen and severely injuring another. The plaintiffs sued for wrongful death, personal injuries and loss of consortium. There was evidence of negligence by the defendants in improperly storing paint, benzine and other flammables on the premises, in failing to provide fire doors or extinguishers, in permitting the accumulation of litter in the corridors, and in other particulars. The trial court entered judgments for the defendants notwithstanding the jury's verdict for the plaintiffs. The Supreme Court reversed and reinstated the verdicts, holding that the plaintiffs could recover for the defendants' failure to use reasonable care in maintaining the premises, and that the jury could have found the hazards of fire and injuries in fighting it were reasonably foreseeable. Two Justices dissented on the issue of liability. In the majority opinion, the court said:

> "It is highly illogical to say that a fireman who enters the premises quite independently of either invitation or consent *cannot be an invitee* because there has been no invitation, but *can be a licensee* even though there has been no permission. The lack of logic is even more patent when we realize that the courts have not applied the term 'licensee' to other types of public employees required to come on another's premises in the performance of their duties, and to whom the duty of reasonable care is owed. If benefit to the landowner is

the decisive factor, it is difficult to perceive why a fireman is not entitled to that duty of care, or how the land owner derives a greater benefit from the visit of other public officials, such as postman, water meter readers and revenue inspectors, than from the fireman who comes to prevent the destruction of his property (Citations omitted).

"Consequently, it is our opinion that since the common-law rule labelling firemen as licensees is but an illogical anachronism, originating in a vastly different social order, and pock-marked by judicial refinements, it should not be perpetuated in the name of 'stare decisis.' That doctrine does not confine our courts to the 'Calf Path,' nor to any rule currently enjoying a numerical superiority of adherents. 'Stare decisis' ought not to be the excuse for decision where reason is lacking." 20 Ill. 2d at 415-16.

That case has been widely discussed. See, in favor of the holding, *Prosser, supra;* Note, 47 Cornell L.Q. 119, *supra;* 14 Vand. L. Rev. 1541 (1961); *contra, Scheurer v. Trustees of Open Bible Church,* 175 Ohio St. 163, 192 N. E. 2d 38 (1963).

Minnesota has held that a fireman responding to the call of duty enters the land of another in a status *sui generis,* and that the occupant has a duty to warn firemen of any hidden dangers if he has knowledge of the danger and an opportunity to give warning. *Shypulski v. Waldorf Paper Products Co.,* 232 Minn. 394, 45 N. W. 2d 549 (1951). The duty referred to in the decision is no greater than that owed to a licensee under the Maryland law. The *sui generis* approach is also taken in *Krauth v. Geller,* 31 N. J. 270, 157 A. 2d 129 (1960). See also Ann. 86 A.L.R. 2d, *supra,* 1212-13 and 35 Minn. L. Rev. 513 (1951).

The balancing of the scales of justice as between fireman and property owner, it is suggested, may shift with the place in which the fireman is injured and also, perhaps, with the stage in the execution of the fireman's duties when the injury occurs. When a fire department is called to fight a blaze, the cause of the blaze is immaterial. It may be the result of actual negligence on the part of the property owner, such as the drop-

ping of a lighted match, or of his negligence in the maintenance of his property, as in permitting a known defective condition of the wiring to remain uncorrected. In either case, if the fireman is injured by the flames or gases of the conflagration, apart from unusual factors operative after the fire has begun, he can not recover. Fighting the fire, however caused, is his occupation. Compensation for injuries sustained in the fulfilment of his duties, absent other circumstances, is the obligation of society.[1]

Even though the property owner might be held liable for negligence to a business visitor injured in the resulting fire, the cases are uniform in holding that, apart from failing to warn of hidden dangers and statutory violations, he is not liable to the fireman. *Scheurer v. Trustees of Open Bible Church, supra,* (unguarded excavation on church property held insufficient to impose liability for injuries sustained by policeman) ; *Krauth v. Geller, supra,* (recovery denied notwithstanding the fact that nonconforming rail caused death of fireman) ; *Baxley v. Williams Construction Co.,* 98 Ga. App. 662, 106 S. E. 2d 799 (1958) (recovery denied notwithstanding the fact that fireman fell into open excavation) ; *Anderson v. Cinnamon,* 365 Mo.

---

1. "The burden placed upon property owners of being liable to a fireman or policeman, who comes upon private premises unexpectedly at any time of day or night to fight a fire on the owners' premises or on adjoining premises or to apprehend a criminal in his act of crime or fleeing from a crime committed on other premises, as if he were an invitee, is too great. The benefit from the performance of the official duties of these public employees is shared by all citizens of the community and the burden of loss caused by injury should be shared by all citizens of the community through taxes. Under these circumstances, it is appropriate that the defenses available to the political-subdivision employer should be only those available under the Workmen's Compensation Act, and that the limitations upon recovery should be those prescribed by the Legislature." *Scheurer v. Trustees of Open Bible Church,* 175 Ohio St. 163, 192 N. E. 2d 38, 43 (1963).

Firemen in Maryland are under the coverage of the Workmen's Compensation Act, Code (1957) Article 101, Section 33. They may also be entitled to pensions under special legislation. Code (1957) Article 88A, Sections 40-43. See *Montgomery Co. v. Kaponin,* 237 Md. 112, 205 A. 2d 292 (1964).

304, 282 S. W. 2d 445 (1955) (failure to warn fireman of defective porch held insufficient to impose liability). See Ann., 86 A.L.R. 2d 1205, 1209 (1962).[2]

It is when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk, that the justice of continuing to regard him as a licensee only is questioned.

The Tentative Draft of the Restatement of Torts (Second) would make the degree of duty of the possessors of land to persons, such as firemen, entering the land in the exercise of a privilege, depend upon whether the public officer suffers harm because of a condition of a part of the land then held open to the public. The proposed subsection reads as follows:

"(2) THE LIABILITY OF A POSSESSOR OF LAND TO A PUBLIC OFFICER OR EMPLOYEE WHO ENTERS THE LAND IN THE PERFORMANCE OF HIS PUBLIC DUTY, AND SUFFERS HARM BECAUSE OF A CONDITION OF A PART OF THE LAND THEN HELD OPEN TO THE PUBLIC, IS THE SAME AS THE LIABILITY TO AN INVITEE." Tentative Draft No. 5 (Apr., 1960).

The proposed rule would encompass the situation in *Dini v. Naiditch, supra.*

An example of case law applying the rule proposed in the Re-

---

2. "The general rule as to the nonliability of an owner or occupant to a paid fireman for negligence is often stated in terms of nonliability for negligence in *creating* or *starting* a fire. * * * However, it seems clear that on principle such rule of nonliability extends not only to negligence in creating or starting the fire but also includes negligence related to the spread of the fire, such as ordinary negligence in housekeeping which tends to promote the spread of a fire after its inception from other causes. Indeed, the two situations are often indistinguishable. * * * There are certain risks inherent in fire fighting: smoke, flame, and the like. The collapse of a floor, ceiling or wall of a burning building, without more, is a hazard a fireman must ordinarily anticipate. Undue risk beyond these inherent hazards is something more." *Jackson v. Velveray Corp.,* 82 N. J. Super. 469, 475, 198 A. 2d 115 (1964).

statement is *Meiers v. Fred Koch Brewery*, 229 N. Y. 10, 127 N. E. 491 (1920) cited with other cases in the note to the tentative redraft of the subsection. In that case, as set forth in the note, "[t]he chief of the fire department came to defendant's brewery to extinguish a fire in the evening, when the brewery was apparently open for business. On his way in he was injured by falling into an open coal hole in a driveway maintained for public use. The defendant apparently did not know of his presence, and had no opportunity to warn him. He was allowed to recover. Stress was laid upon the fact that he was injured upon a part of the premises open for public use."

We find nothing in the decisions of this Court inconsistent with the rule proposed in the Restatement draft. In *Steinwedel v. Hilbert, supra,* the appellant, a member of the Baltimore Fire Insurance Salvage Corps, in the course of his duties went to the premises occupied or owned by the defendants where a fire had originated and was injured by falling into an elevator shaft which he claimed had been negligently left open and unguarded. It was held that, on the facts, the appellant was a licensee only and not an invitee, and that the owner or occupant of the premises was not under any duty of care to keep the premises prepared and safe for a fireman. Judgment for the appellees on demurrer to the declaration was affirmed. In his opinion for the Court, Chief Judge Bond referred to the fact that there was no allegation that the elevator shaft was opened in or near a way prepared and set apart as a passage way. He discussed the *Meiers* case, but distinguished it on its facts.

We have recognized that there may be a change of status, "geographical or chronological", of one who starts as an invitee. *Levine v. Miller*, 218 Md. 74, 79, 145 A. 2d 418 (1958); *Pellicot v. Keene*, 181 Md. 135, 139, 28 A. 2d 826 (1942); *Gordon Sleeprite Corp. v. Waters*, 165 Md. 354, 358, 168 Atl. 846 (1933). See *Restatement, Torts* § 343 Comment b (1932). While the cases cited deal with change of status from invitee to licensee, there is no reason in logic or justice, when circumstances warrant, why the transmutation cannot be from licensee to invitee.

In the present case, the appellant contends he was injured not because of the fire itself but because the failure of the

appellees to keep the acetone in a proper container was negligence operative apart from the fire, and that this negligence caused the injury. There was sufficient evidence to support this theory to go to the jury, under proper instructions as to the legal effect, if any, on the issue of liability, if the jury found the facts to be in accordance with the appellant's contention. On the assumption that the appellant's contention as to the facts is correct, he was injured not as a result of the fire itself but because of negligence of the appellees which both caused the fire and put into operation an active, dangerous force which operated after the fire had started. On the other hand, the injuries were not sustained in any portion of the premises held open to the public. The issue presented is whether the initial occupational hazard of the fire being no longer involved, the fireman retains his status as a licensee only, or whether he is entitled to the greater care due an invitee. The determination of that question depends upon whether the property owners owed the appellant a higher duty because their negligence affected him, chronologically, after the expected peril of the fire had been met, like the duty they would owe under the proposed Restatement (Second) rule, if, geographically, the peril was in a portion of the premises publicly used.

We do not decide this issue, because we find that, even on the appellant's hypothesis as to the cause of the injury, the trial judge's instructions to the jury were as favorable to the appellant as they could have been even if his contentions as to his status as an invitee at the time of his injuries were correct.

In his charge, Judge Prendergast instructed the jury as to the legal status of a fireman when he comes upon the property for the purpose of extinguishing the blaze. He referred to the difference in the status of a fireman in this respect from that of an invited guest in the home of the property owner and told the jury that even though the defendants might have to respond in damages to a neighbor or invited guest, if they had negligently started the fire in the first place, the plaintiff, when he came to the house to fight the fire, was in the position of a licensee. He told the jury that, because of the nature of his duties, the fireman takes the property as he finds it, subject to the usual and ordinary hazards to which firemen are ordinarily

exposed. The Judge continued: "However, if there exist unusual or extraordinary dangers, of which the occupant is aware but of which the fireman is not, the situation may be different. The possessor of land must exercise reasonable care not to subject the fireman to unusual danger and to see that the fireman is aware of any such unusual danger of which the landowner has knowledge and the fireman could not reasonably be expected to discover in the discharge of his duties." The Judge's instructions on this phase of the case, involving the position of the plaintiff when he came to the defendants' premises to fight the fire, was in accordance with the applicable legal principles.

Judge Prendergast then proceeded to instruct the jury as to the legal situation which would exist if they found that because of the property owners' negligence there existed a danger greater than that which is normally found in a private dwelling house. He told the jury that, if the consequences of that danger, if it existed, were known to the defendant, Lloyd Eisenberg, or reasonably foreseeable by him, he had a duty to warn the firemen of the unusual danger and not permit them to be exposed to its consequences, if the defendant was aware of those consequences and the plaintiff was not. He instructed the jury that they must consider whether the danger, if any, which existed was not only an unusual and unexpected one but also whether Eisenberg knew or in the exercise of reasonable care should have known of its existence.

Judge Prendergast concluded this portion of his charge as follows:

> "To summarize then, the various elements upon which the plaintiff's case depends, I suggest that you first ascertain whether the fire was started by negligence on the part of the defendant, Lloyd A. Eisenberg. If you find that it was, then you should next inquire as to whether he had stored a quantity of flammable liquid, described as acetone, in such a place and under circumstances likely to create an unusually hazardous condition in the event that the fire should occur, and if so whether these conditions were the proximate cause of the intense heat, the accumulation of gases

and other factors said to have produced plaintiff's injury. If you should resolve these problems in favor of the plaintiff you must still consider whether Eisenberg knew, or in the exercise of reasonable care, should have known that the resulting injury could probably result from his acts. If you find that he knew or should have known and anticipated the danger and that it was unusual and not ordinarily to be expected in his home, then you may conclude that he was negligent and in that event your verdict should be in favor of the plaintiff as against him.

"On the other hand, if you do not find that he was negligent in having quantities of flammable liquids in his house or that any negligence on his part was the proximate cause of the injury or that Eisenberg did not know or should not have been aware of the resultant danger in the exercise of ordinary care, then in any of those events your verdict should be for the defendants.

"What I have said about Lloyd A. Eisenberg applies likewise to the case alleged against his wife, Diane U. Eisenberg, the other defendant."

The portion of the Judge's charge which has been quoted did not in express terms refer to the plaintiff in the situation postulated as an invitee but the duty which the Judge told the jury the property owner had to the plaintiff under the conditions set forth was the duty which a property owner owes to an invitee; it was not restricted to the limited duty to abstain from wilful or wanton conduct and entrapment applicable to a person upon the premises as a licensee only. In our opinion, the trial judge's instructions to the jury on this phase of the case were as favorable to the appellant as any to which he would have been entitled even under the proposed Restatement rule. It was also as favorable to him as though that rule were extended to include the treatment of a fireman as an invitee if the assumed negligence of the property owner affected him subsequent to and apart from the expected peril of the fire itself and even though that peril was operative in a portion of the premises not held open to the public.

There were conflicts in the testimony as to whether or not the appellees were negligent in any way and whether, if they were, the danger to the plaintiff was reasonably foreseeable and was a proximate cause of his injuries. Clearly, the trial court was correct in denying a directed verdict on the issue of liability in favor of the appellant. While Judge Prendergast refused the appellant's request for instructions that the appellant was an invitee rather than a licensee, in effect, he adopted the appellant's theory of his status in the only phase of the case in which, in our view, the appellant could properly have been regarded as an invitee.

The appellant contends that the trial court erred in refusing the appellant's requested instructions insofar as they related to proximate causation and that the Judge also was in error in his definition of the term. In his charge, Judge Prendergast said: " 'Proximate' cause means, literally, the 'next' or immediate cause of the injury, as distinguished from remote or merely possible causes."

In *Holler v. Lowery,* 175 Md. 149, 161, 200 Atl. 353 (1938), we said:

> "There is no mystery in the doctrine of proximate cause. It rests upon common sense rather than legal formula. Expressed in the simplest terms, it means that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of. It involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct of the defendant, and is itself the logical and natural cause of the injury complained of. In the statement of the doctrine an intervening cause means not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm.
>
> "Those principles are implicit in these statements found in *A. L. Inst. Restatement of Torts,* secs. 431 and 432." 175 Md. at 161.

See also, *W. B. Bradley v. N. H. Yates,* 218 Md. 263, 270, 146 A. 2d 433 (1958), and Beale, *The Proximate Consequence of an Act,* 33 Harv. L. Rev. 633 (1920).

After Judge Prendergast's statement quoted above as to the meaning of proximate cause, he proceeded to apply that doctrine to the facts of the case. In this portion of the instructions the Judge stated:

> "If you believe from the evidence that the manner in which defendants kept the flammable liquids on their property not only caused the fire but also produced the tremendous heat which you heard described by some of the witnesses, and that there also resulted gases from the unburned portions of the fuel, which accumulated in pockets, as described in the expert testimony, and that the gases were suddenly released under great pressure, in a concentrated thrust of intense, moist heat, and that these circumstances caused plaintiff's injuries, then you may conclude that what defendants did with the flammables or acetone, was the proximate cause of the resultant injuries."

This specific application of the doctrine of proximate causation to the facts was in accord with the applicable legal principles and in all probability enlightened the jury as to the meaning of the doctrine more than would have any abstract definition. "We have said on various occasions that the trial court's instructions must be considered as a whole; that the charge need not comply with the technical rules of formal prayers and that this Court will not condemn a charge because an isolated part of it does not seem to do justice to one side or the other or because of the way in which it is expressed. *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 102; *Lloyd v. Yellow Cab Co.,* 220 Md. 488, 495-496; *Grier v. Rosenberg,* 213 Md. 248, 257; *West v. Belle Isle Cab Co.,* 203 Md. 244, 256." *Krieger v. Baltimore City,* 234 Md. 382, 385-86, 199 A. 2d 363 (1964).

We find that the trial judge's instructions to the jury under the common-law principles involved not only did not prejudice any legal rights of the appellant but were as favorable to him, as, under the law, he had any right to expect.

## II

The appellant contends that, apart from common-law principles, the appellees were negligent because, in storing acetone in a glass jug rather than in a metal container, they violated the provisions of the Montgomery County Fire Prevention Code, and that the Court erred in refusing the appellant's requested instructions as to the effect of such violation and in the instructions he gave in the matter.

Whether or not the defendants violated the Code depends upon a construction of its terms and a determination of the facts. The interpretation of a statute or ordinance is for the court. *Emery v. F. P. Asher, Jr. & Sons, Inc.,* 196 Md. 1, 13, 75 A. 2d 333 (1950); *Vogelsang v. Sehlhorst,* 194 Md. 413, 419, 71 A. 2d 295 (1950). In this case, however, the trial judge was not requested to construe the provisions of the Fire Prevention Code, and no exceptions were taken to his failure to do so. Under these circumstances, the question of whether the Judge should have gone further than he did in his charge in respect of the meaning of the terms of the Code is not properly before us for decision. Maryland Rules 552b, 554d; *Montauk Corp. v. Seeds,* 215 Md. 491, 500-01, 138 A. 2d 907 (1958).

The cases are not uniform as to whether a fireman is protected by a statute or ordinance requiring safety guards or precautions. Ann. 86 A.L.R. 2d 1205, 1218-20 (1962); 47 Cornell L.Q., *supra,* 125-26. See also *Restatement, Torts,* § 286 (1932) and *Prosser, supra,* at 193-96. In his charge, Judge Prendergast told the jury that they had heard the Code read to them, that it was for them to determine whether its terms had been violated, and if they had, whether such violations were the proximate cause of the plaintiff's injury. The fact that the court referred to the reading of the Code and its terms was an indication that it was applicable. See *Vogelsang v. Sehlhorst, supra,* 194 Md. at 420. The clear purport of this portion of the charge was that if the jury found the defendants had violated the Code and that the violations were a proximate cause of the injuries, the plaintiff was entitled to recover.

In Maryland, violations of a statute or ordinance are evi-

dence of negligence but do not constitute negligence *per se*. *Gosnell v. B. & O. R. R. Co.,* 189 Md. 677, 687, 57 A. 2d 322 (1948). See also *Farley v. Yerman,* 231 Md. 444, 190 A. 2d 773 (1963), and *Ford v. Bradford,* 213 Md. 534, 541, 132 A. 2d 488 (1957). The charge, taken as a whole, made it clear to the jury that, in determining whether or not the defendants were negligent, violations of the Code were to be taken as evidence of negligence. The questions of whether there were violations, and if so, whether the violations were the proximate cause of the injury, were questions of fact, properly left to the jury's determination.

The appellant argues that the trial judge erred in refusing his requests for instructions that the defendants, as property owners, are liable for the maintenance of a nuisance. The term "nuisance" is generally applicable to a condition of premises unsafe in itself without other operative force. *Sherwood Brothers, Inc. v. Eckard,* 204 Md. 485, 493-95, 105 A. 2d 207 (1954). In overruling objections to failure to include mere specific reference to the nuisance theory in his charge, Judge Prendergast said that the elements of nuisance which might be applicable in this case were embodied in his instructions. We agree.

We have considered all of the appellant's objections to the charge of the lower court and find no reversible error therein.

### III

The appellant contends that the trial judge committed prejudicial error in overruling his exception to the appellees' answer to the appellant's second interrogatory. This interrogatory reads: "Name any person not heretofore mentioned or mentioned in your depositions having personal knowledge of facts material to this case." [3] The appellees answered: "None known at this time. We intend to make additional investigations and will supply names as discovered." The appellant excepted to this answer on the grounds that it was incomplete on its face in that it did not meet the substance of the question presented, and seriously prejudiced the appellant in preparing for trial.

**3.** Appellant's interrogatory followed the standard form suggested in Niles, *Discovery Digest for Maryland* 40 (1960).

The appellant has not demonstrated, nor does the record show that at the time of the filing of the appellees' answer to the interrogatory, they knew of anyone not theretofore mentioned who had personal knowledge of facts material to the case. Moreover, the grounds given for the exception were not sufficiently specific. See *Wolf v. Hellman,* Baltimore City Court (Daily Record, Dec. 28, 1956).

Two of the appellant's interrogatories asked for a statement of facts upon which the appellees planned to rely to show the appellant's contributory negligence. The appellees answered in effect that at the time they had no facts on this issue other than those adduced in the depositions, but that a further investigation was being made, and any further relevant facts produced by it would be furnished. The trial court overruled the appellant's exceptions to the answer, but ordered the appellees to supply any additional information obtained by them by a date fixed prior to trial. We think this disposition of the matter was fully in accord with the intent and spirit of the Maryland discovery rules. The appellant was protected against surprise and was given an adequate period for preparation prior to trial if alleged new facts were furnished on the issue. The appellant has not properly raised in this Court any contention that the trial court's order was violated by the appellees, or if it was, that the violation was properly called to the court's attention by a timely objection at trial.

## IV

The appellant contends that a memorandum of recorded statements of the firemen as to what took place at the scene was improperly admitted. The trial court ruled that it was admissible under the business records exception to the hearsay rule, Code (1957) Article 35, Section 59. The statements contained in the memorandum were shown to have been made at the station house immediately following the return of the firemen from the fire. The pencilled notes were later typed and placed in the fire marshal's file. The fire marshal was called to testify and it was through him that the statements were admitted. Only the statements of the firemen who had testified or were then present in the courtroom were admitted. Appellant's counsel stated that

he had seen the statements prior to the time that they were offered into evidence.

We think this evidence was admissible under the business records statute. The fire marshal testified that the report was kept in his files, that it was a record regularly kept by the Fire Department in the course of business and that the photostatic copy offered in evidence was an accurate reproduction of the notes in his file. The requirements of Section 59 were fully met. See *Beth. Shipyard v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256 (1947); Powell, *Admissibility of Hospital Records into Evidence* 21 Md. L. Rev. 22, 30 (1961). Appellant argues that the record was inadmissible because there were inconsistencies between the statements attributed to certain witnesses in the report and their testimony in court. We have consistently held that the weight to be accorded evidence is for the jury. *Capitol Traction Co. v. McKeon,* 132 Md. 79, 86, 103 Atl. 314 (1918) and cases cited therein.

The appellant further contends that the trial court committed reversible error in overruling his objection to a question put to the appellee, Lloyd Eisenberg, on direct examination, as to whether or not he had personal knowledge of the existence of the Montgomery County Ordinance which prescribed the manner in which acetone was to be stored. The appellant, as part of his case, had introduced evidence tending to show that the appellee knew that he had violated the Montgomery County Fire Prevention Code. Officer Treadwell had testified on behalf of the appellant to the effect, at least by inference, that Eisenberg had been arrested for violation of the Code and had paid a fine for the violation. It was proper under such circumstances for the appellee to explain his conversation with the officer. Evidence which explains facts already in evidence is relevant and therefore admissible. *Morrow v. Arthur,* 134 Md. 182, 106 Atl. 356 (1919). The appellant's objection to the appellee's testimony was properly overruled.

The appellant argues also that it was prejudicial error for the trial court to admit testimony by the fire marshal, over objections, that acetone was sold on the retail market in glass containers, that this was the prevalent practice in this county,

and that his office, which was charged with the enforcement of the Fire Prevention Code, had taken no action to prevent the practice. This testimony had been previously given by the fire marshal in a deposition; on the stand he testified somewhat differently. The appellees had unsuccessfully objected to the admission of the Code, and there was a dispute between counsel as to the meaning of its terms. If the ordinance was ambiguous, evidence of the practice in respect of its enforcement was some evidence of administrative construction. See *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754 (1946) ; *Frederick County Com'rs. v. Board of Education of Frederick County,* 175 Md. 277, 1 A. 2d 628 (1938). As we have noted above, no objection was taken to the failure of the trial court to charge the jury as to the meaning of the Code, nor was there a request made by the appellant for such a construction prior to the charge. Under the circumstances, we find no prejudicial error in the admission of the testimony.

*Judgment affirmed, with costs to the appellees.*