KAFFL *v.* MORAN

[No. 103, September Term, 1963.]

*Decided February 6, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Herbert J. Hirsch* for appellant.

*Phillips L. Goldsborough III,* with whom were *Smith, Somerville & Case* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This suit was brought by the plaintiff-appellant to recover for property damage to his automobile when it was struck by the defendant-appellee's car. The case was tried before a jury, which returned a verdict for the defendant and judgment was entered thereon. On appeal therefrom the appellant contends that the trial court erred in not granting his motion for a directed verdict on the ground of primary negligence on the part of the defendant, and that the trial court erred in instructions to the jury with respect to the care required to be exercised by the defendant and the avoidability or unavoidability of the accident.

The collision giving rise to this suit was one of a series of accidents involving a total of eight or nine automobiles which occurred in the northbound lane of the Ritchie Highway after dark on a December evening. The weather was wet, snowy and sleety and the roadway was icy and slippery. Two collisions had occurred at the foot of a hill about 450 feet long before the plaintiff's daughter, who was driving his car, arrived on the scene. First, a Volkswagen slid and collided with a Chrysler, then a Ford driven by a witness who had seen the first two

cars collide came down the hill, and despite the witness' attempts to use his brakes, slid and struck the Chrysler, turned 180 degrees, and wound up in the grass plot between the two northbound and the two southbound lanes of the highway. Next the plaintiff's car, a Corvair, slid down the hill and collided with a Pontiac which apparently was preceding it down the slope. The Corvair wound up crossways of and partially in each of the two northbound lanes. Then the defendant came down the hill driving his Buick, slid, and collided with the plaintiff's Corvair. Some little while later a Comet and a Chevrolet came down the hill and collided with each other. After several of this assorted group of cars had gotten into difficulty but before the defendant arrived, two or more men with flashlights had gone up the hill to attempt to direct traffic. The evidence is not clear as to when the defendant could or should have seen them. His testimony indicates that he did not see any of them until after the accident, that he first saw cars standing in the road ahead when he was about 100 or 125 feet from them, that his speed was about twelve or fifteen miles an hour, that he tried to pull to the right to get off on the gravel shoulder but that he could not turn his car, and that he tried to use his brake but could not stop or even slow down on the ice. He did not attempt to pull to the left.

Each party moved for a directed verdict, and the trial judge, in denying each motion, briefly reviewed the evidence most favorable to the opposite party. It will suffice here to quote his summary of the evidence which caused him to deny the plaintiff's motion. It is as follows: "Well, the testimony most favorable to the Defendant, which the Court would consider in a motion by the Plaintiff for a directed verdict, is to the effect that he was driving slowly down the hill, that he was driving at a very moderate speed, that he was braking the car as he came down, that when he got one hundred feet away he added pressure to his brake, and his testimony is that regardless of what he could have done, that under the circumstances at that time he could not have avoided the collision. The Court also cannot close its eyes to the fact that six or seven other cars had accidents at the same spot. The Court is of the opinion, after

considering all of the evidence, that it is a matter for the jury to decide."

We see no occasion to elaborate further on the facts. We think that the trial judge did not err in refusing to direct a verdict against the defendant.

The appellant's first objection to the instructions is in substance that the court refused or failed to instruct the jury that the operator of a motor vehicle must exercise unusual care to keep his vehicle under proper control on a slippery road, particularly when doing downhill. The short and sufficient answer to this contention is that the trial court did so instruct the jury. After stating that it was the defendant's duty, in approaching the scene of the accident, as he was coming down the hill, and up until the time of the collision, to keep his car under reasonable control, that he must keep a reasonable lookout to avoid accidents, and after pointing out that it was "uncontradicted that this was a slippery, sleety, snowy day," the court continued that: "under those circumstances which were known to the defendant, it was necessary for him to use an added degree of caution and diligence in the handling of his automobile as to control, as to speed, and as to vigilance in looking ahead * * *, that is, he must use that degree of care which an ordinarily prudent person would have used under like or similar circumstances * * *." Then followed an instruction to the effect that if the jury should feel that the defendant did not use that degree of care and if his failure to do so caused the accident the verdict should be for the plaintiff. Next followed instructions that if, on the other hand, the jury should find that the defendant did have his car under proper control "under the circumstances there existing," that he was driving prudently prior to the happening of the accident, and "was using that degree of care which an ordinarily prudent person would have used under all the circumstances relating to this case, and if you find that his automobile skidded into the Plaintiff's car and damaged it and that he could not have avoided same by the exercise of ordinary care, then you could conclude that it would be an unavoidable accident, and your verdict would be for the Defendant."

The required standard of care on the part of the operators of motor vehicles (other than common carriers) is ordinary care

under the existing circumstances. The actions or precautions required to be taken to meet this standard may vary under different circumstances, but the standard remains the same. *People's Drug Stores v. Windham,* 178 Md. 172, 185, 12 A. 2d 532; *Christ v. Wempe,* 219 Md. 627, 640, 150 A. 2d 918; *Lemons v. Maryland Chicken Processors, Inc.,* 223 Md. 362, 367-368, 164 A. 2d 703. It might have been preferable, we think, to have avoided the use of the term "degree of care" in the instructions, but we can find no prejudice to the appellant from its use. Certainly the circumstances of weather and road conditions and the consequent need for added vigilance and caution to meet them were clearly brought to the attention of the jury.

The appellant's objections to the instructions insofar as they referred to the accident as being unavoidable are sought to be presented as two-fold: one as to making any reference at all to an unavoidable accident; the other as to the form of the instruction, since the term "unavoidable accident" was not defined. No objection was, however, made in the trial court to the form of the instruction, and this objection is therefore not properly before us. Maryland Rules of Procedure, Rule 554 e; *State, Use of Charuhas v. Heffelfinger,* 226 Md. 493, 497, 174 A. 2d 336.

It is a rather close point whether any instruction should have been given referring to the accident as "unavoidable," but we think that here, as in *Lloyd v. Yellow Cab Co.,* 220 Md. 488, 154 A. 2d 906, the term was not used in its technical (or classical) sense, as defined in *Washington C. & A. Turnpike Co. v. Case,* 80 Md. 36, 30 A. 571, but was used in the "practical, laymen's sense of the word" (220 Md. at 494). Here, as in *Lloyd,* the question of whether or not the defendant was negligent was submitted to the jury, and the question of whether or not the defendant could have avoided it was directly coupled with that question, and the theories of both parties were adequately presented to the jury in the instructions given. We think that the *Lloyd* case, in which Judge Prescott discussed the problem thoroughly, is controlling here. As was there said: "Maryland Rule 554 c provides that: 'An oral instruction need not comply with the technical rules as to prayers.'" The quotation in *Lloyd* from *Bull Steamship Lines v. Fisher,* 196 Md.

519, 529, 77 A. 2d 142, which was reiterated in *West v. Belle Isle Cab Co.*, 203 Md. 244, 251, 100 A. 2d 17, is also apposite here: "The purpose of oral charges is to tell the jury in simple words what the law is in a case before them, and we will not be too particular in criticising the words used if the result is sufficient." Here we think the words used were not misleading and served the purpose just stated.

*Judgment affirmed; the appellant to pay the costs.*