NATHANIEL CEEN, Plaintiff-Appellee, *v.* CHECKER TAXI COMPANY, INC., Defendant-Appellant.

First District (1st Division)   No. 61918

Opinion filed September 7, 1976.

Jesmer and Harris, of Chicago (Francis X. Riley, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini and Armand E. Capanna, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

This is a negligence action seeking recovery for damages done to the plaintiff's vehicle in an automobile collision. It was alleged that an employee of Checker Taxi Company negligently left the ignition key in the taxicab with the motor running in violation of section 92 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 189), and that these acts were the proximate cause of a collision between the plaintiff's vehicle and the defendant's taxicab. The court found for the plaintiff, in a bench trial. The defendant appeals contending that section 92 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 189) is unconstitutionally vague.

The case was tried upon stipulated facts. On December 23, 1969, a cab owned by the defendant was assigned to one of its drivers, John Raish. At

about 6:30 p.m. that evening the driver discharged a female passenger at 1134 West Pratt Boulevard in Chicago, Illinois and immediately thereafter picked up a new passenger, Edward Keating, about one-half block from there. The cab driver then noticed a small bag containing women's shoes left on the back seat by his recent female passenger. He returned to the spot where he had delivered the female passenger and left the cab to return the shoes. The cab was parked alongside the curb on Pratt facing west. His passenger Keating was seated in the passenger compartment, the cab keys were in the ignition and the motor was running. When he left the taxicab the driver did not give any instructions to his passenger. The cab driver proceeded inside the building at 1134 West Pratt and lost sight of the cab. When the cab driver returned, the cab and passenger were gone. A Chicago police officer then came to the scene and while taking the cab driver's report was told that Keating, the passenger who had been left in the cab, had driven away with the cab and later collided with the plaintiff's parked car. The collision took place at 7:41 p.m. that evening in Evanston, Illinois and resulted in $546.76 in damages to the plaintiff's car.

Defendant contends that section 92 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 189) which he was charged with violating is unconstitutionally vague because the word "unattended" used therein lacks sufficient definiteness to give adequate notice of the prohibited conduct. Defendant cites a number of cases to support its contention that the courts have construed "unattended" to mean both a vehicle with someone in it and a vehicle with no one in it. This has created confusion, defendant contends, as to the meaning of the word "unattended" and has resulted in the absence of any ascertainable standard to follow for persons wishing to obey the statute.

Section 92 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 189, and presently Ill. Rev. Stat. 1975, ch. 95½, par. 11—1401) states that:

> "No person driving or in charge of a motor vehicle shall permit it to stand *unattended* without first stopping the engine and removing the ignition key, and when standing upon any perceptible grade, without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway." (Emphasis added.)

In reviewing the cases defendant has cited, we do not find that they create any confusion as to the meaning of the word "unattended." In *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74, a cab driver left the taxicab without turning off the motor and taking the keys from the ignition. A thief then stole the taxicab and became involved in an accident. There was no issue raised as to whether the statute was violated. The issue in *Ney* was whether the violation of the statute constituted negligence under

the circumstances of that case. The court stated that the statute was designed as a public safety measure. It said that while violating the statute was *prima facie* evidence of negligence, such a violation did not create any liability in negligence unless there was a direct and proximate connection between the violation and the injury caused. The court then said:

> "Certain facts may exist which a jury of reasonable men would consider as determinative in leading to a conclusion of liability or nonliability, all according to the circumstances of the particular case. Assume a defendant violates the statute in question, yet before leaving the vehicle he secures the doors and windows. Or assume he has a reliable or an unreliable person nearby watching the vehicle for him. Or assume he leaves his car within view of a police officer who knows defendant and is acquainted with his habit of so leaving his car. Or assume the intervening third party drove the car carefully. Many other varying examples could be constructed which would have different material circumstances. The nature of the community, its population, the elements of time and space in innumerable aspects, may in certain cases be deemed material facts for a jury's consideration.
>
> We are in agreement with the court below in our belief that reasonable men might differ on the question where there were special circumstances surrounding the defendant's violation of the statute which may be the proximate cause of the damage that followed." (2 Ill. 2d 74, 83, 117 N.E.2d 74, 80.)

This passage which our defendant refers to does not deal with the word "unattended" or whether the defendant in *Ney* violated the statute. It only deals with the question of whether the violation of the statute in *Ney* was the proximate cause of the injury. It does not create any confusion as to the meaning of the word "unattended." A number of the other cases the defendant cites hold that there is no violation of the statute where the defendant leaves his vehicle with the keys in the ignition unattended on property other than a public highway. These cases do not define the word "unattended" and are inapplicable here. The remaining cases defendant cites are not Illinois cases, and while they of course are not controlling in the construction of an Illinois statute, we do not find that they create any confusion in the definition of the term "unattended."

None of the Illinois cases defendant cites or which we have examined defines the word "unattended" or considers what specific circumstances constitute leaving a vehicle "unattended." They only have considered under what circumstances a violation of the statute constitutes actionable negligence. Neither does the statute further define the term "unattended." In absence of a statutory definition, words should be given their common

dictionary meaning in light of the object sought to be accomplished in the statute. (*Bowes v. City of Chicago*, 3 Ill. 2d 175, 120 N.E.2d 15.) A number of the cases have stated what the purpose of the statute is. They all agree that it is not an antitheft measure, but a safety measure. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74; *Kacena v. George W. Bowers Co.*, 63 Ill. App. 2d 27, 211 N.E.2d 563; *Ostergard v. Frisch*, 333 Ill. App. 359, 77 N.E.2d 537.

In *Kacena* this court further defined the purpose as a safety measure to protect the public from the danger of automobiles falling into the hands of irresponsible persons. Justice Niemeyer in his dissent in *Ostergard* stated that the statute was not only intended to prevent automobiles from being set in motion by children or other intermeddlers, but also to prevent automobiles from being set in motion without the intervention of a human agency. That the legislature was contemplating a vehicle being set in motion without the intervention of human agency when it enacted this section is clear from the second part of the statute which requires the driver or owner to set the brake and turn the wheels into the curb when parking on an incline. Webster's New International Dictionary (3d ed. 1966), at page 2482, defines the word "unattended" as "lacking a guard, escort, caretaker, or other watcher * * * not watched with care, attentiveness or accuracy * * *."

■■ The owner or driver of a vehicle may of course avoid violating the statute by simply turning off the motor and removing the ignition key. However, if he chooses to leave the key in the ignition he must be sure that the vehicle is left attended. Taking this common dictionary meaning of the term "unattended" in light of the statute's purpose, the statute therefore requires the owner or driver of a vehicle who leaves the keys in the ignition to ensure that it is guarded or watched over in such a manner so as to avoid the vehicle being set in motion by children, thieves, other intermeddlers or nonhuman agencies. We are of the opinion that this requires an owner or driver to leave such a vehicle in the attendance of a person the owner or driver trusts, who is to be responsible for watching over that vehicle, who is capable of controlling the vehicle and who has immediate access to the controls should the vehicle be suddenly set in motion while the motor is running.

■■■ In considering whether a statute is unconstitutionally vague, the rule is that no person should be held criminally responsible "for conduct which he could not reasonably understand to be proscribed." (*United States v. Harriss*, 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812.) However, where the language used conveys a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," there is no constitutional infirmity. (*United States v. Petrillo*, 332 U.S. 1, 8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1542; *City of*

*Decatur v. Kushmer*, 43 Ill. 2d 334, 253 N.E.2d 425.) Mathematical certainty is not required of statutory language. (*Grayned v. City of Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294.) In our review of the Illinois cases dealing with the statute we have not found any confusion over the meaning of the term "unattended" and we are of the opinion that the term "unattended" in the context of the statute conveys a sufficiently definite warning as to what conduct is prohibited when that term is measured by common understanding and practices. We are also of the opinion that one reading the statute can reasonably understand that leaving a stranger sitting in the passenger compartment of a taxicab where he has no immediate access to the vehicle's controls and who the cab driver has neither reason to trust nor who is left with any instructions to watch over the vehicle would constitute leaving the cab unattended.

The defendant contends that the statute should be strictly construed to make the language more clear and definite in light of the alleged confusion over whether the term "unattended" means a vehicle with someone in it or no one in it. This we have already done. Our construction of the term "unattended" includes not only the situation where there is no one in the vehicle, but also where there is a person present, but that person cannot be trusted by the owner or is not responsible for watching over the vehicle or does not have immediate access to the vehicle's controls or is not capable of operating the vehicle if that becomes necessary.

Accordingly, the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and SIMON, J., concur.