712 A.2d 166

**Florence MAY**

v.

**GIANT FOOD, INC. et al.**

**No. 1368, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 29, 1998.

Jack A. Gold (Lawrence S. Lapidus and Karp, Frosh, Lapidus & Wigodsky, P.A., on the brief), Bethesda, for Appellant.

Michael L. Dailey (O'Malley, Miles , Nylen & Gilmore, P.A., on the brief), Calverton, for Appellees.

Argued before MOYLAN, HOLLANDER and EYLER, JJ.

HOLLANDER, Judge.

This tort case presents issues of causation and contributory negligence arising from an incident involving Florence May, appellant, who was knocked to the ground by the open passenger door of her moving vehicle. At the time, Ms. May's vehicle was being operated by Lewis Ratino, Jr., appellee, a courtesy clerk for Giant Food, Inc. ("Giant"), appellee. A jury in the Circuit Court for Montgomery County returned a special verdict, finding that Ratino was negligent and that

appellant was contributorily negligent. Appellant timely filed her appeal and presents two questions for our consideration, which we have reframed:

 I. Did the trial court err by permitting the jury to consider the unattended motor vehicle statute, Md.Code (1977, 1998 Repl.Vol.), § 21–1101 of the Transportation Article ("Trans."), as evidence of appellant's contributory negligence?

 II. Did the trial court err by failing to rule, as a matter of law, that any contributory negligence was not the proximate cause of appellant's injuries?

 III. Did the trial court err in refusing to give an intervening/superseding cause instruction?

We answer all three questions in the negative. Therefore, for the reasons that follow, we shall affirm.

### Factual Background

On August 3, 1995, appellant, who was then 76 years old, went shopping at a Giant grocery store located in Montgomery County. When she finished her shopping, Ms. May left her grocery cart at the entrance of the store while she retrieved her vehicle from the parking lot. Appellant then drove her vehicle to the parcel pickup area at the front of the store. When she stopped the car, the passenger side was adjacent to the store, and the automobile was not on a perceptible grade. Appellant blew the horn several times in order to attract the attention of a Giant courtesy clerk who could assist her with her groceries. The events that followed are sharply disputed.

According to appellant, she shifted the automatic transmission of her vehicle into park and engaged the parking brake by pushing a pedal on the floor. Because a courtesy clerk apparently was not available, Ms. May exited the car. In doing so, she left the key in the ignition and the engine running. Ms. May then walked around the back of her vehicle, opened the front passenger door, and prepared to load her lone bag of groceries into the car. As appellant began to load her groceries, Ratino walked out of the store.

Appellant denied that her car started to move after she exited the vehicle. She also claimed that she was startled because Ratino entered her car without her permission. Further, she claimed that when Ratino began to operate appellant's car, she was struck by the passenger door. The following testimony of Ms. May is relevant:

[APPELLANT]: After I got out of the car and opened up that front passenger's door, I got up—went up to get my groceries when Mr. Ratino came out, and asked him where he had been. He hadn't been there. And I turned, I said, "Well, I'll go and get my car—get into my car."

[APPELLANT'S COUNSEL]: Did he make any reply?

A: No, he didn't.

Q: —when you said, "Where have you been?"

A: No, he didn't.

Q: What did he do?

A: I said I was going to go back to the car. Next thing I know, he went to the car, and—

Q: What do you mean, he went to the car?

A: He went in front of the car, and got into the driver's side of the car. I went to the door, the front door, which was open on the passenger's side. I was a little surprised at what he was doing. And I had my hand—the door, that door was open, because I was going to load my groceries there. And my hand was holding onto the handle of the front passenger door, when suddenly the car jolted, and I flew back to the ground. My head hit the ground, my whole—my back hit the ground. And I screamed, naturally. And then someone picked me up. I couldn't get up; I was flat on my back.

Q: Now, the time you left the car on the driver's side—

A: Yes, yes.

Q: —was your car moving?

A: No, it wasn't. I would have known. I would have seen it move, because I had opened—I had closed the door on

the driver's side, went around the back of the car, and opened the door on the—the front door on the passenger's side. I certainly would have seen it moving.

Q: Were you surprised when Mr. Ratino got into the car?

A: I was surprised. I was startled.

\* \* \* \*

Q: Did you at any time give him permission to operate your vehicle?

A: I never gave him permission to go into the car.

Ratino was called as a plaintiff's witness. He is a high school graduate who possessed a valid driver's license on the date in question. In marked contrast to appellant's testimony, Ratino testified that when he came out of the store, he saw that appellant's car was moving backward and told her so. The following testimony is relevant:

[APPELLANT'S COUNSEL]: Did [appellant] tell you that she would prefer someone else to operate her vehicle?

[RATINO]: Yes, she did.

Q: And what did you say to that?

A: I said that if I get somebody else, the car will be out of the Giant Food zone—clear.

Q: How fast was it moving?

A: It was moving, I would say, five miles per hour. That's why I insisted on trying to help her.

Q: Was anyone behind the car?

A: I don't exactly know about that. I think there was one car within probably 100 feet.

\* \* \* \*

Q: All right. Where did Mrs. May go when you got into her car?

A: Well, what happened, as soon as she asked me to get in her car, I went in her car, and tried to stop the moving car. And where she went, she went to open the two

doors. She went to open the two doors which would be on the passenger side, located both on the passenger side at the back door and the front door.

Q: So after you were in the driver's seat, you were aware that she was opening the passenger side door; is that right?

A: Yes. I was completely aware of that. . . .

\* \* \* \*

Q: . . . Once you got into the vehicle, and you were aware that Mrs. May was opening the passenger door, you stepped on the gas; isn't that right?

A: I stepped on the gas by accident. . . .

According to Ratino, after he got into the driver's seat of Ms. May's automobile, but before stepping on the accelerator, appellant had opened the passenger door. He "told her to wait behind the metal bars so she wouldn't get injured, because I didn't know what in the world would happen, whether I was going to make a mistake or not, because nobody's perfect."

The manager of the store, Ellis Schlossenberg, corroborated Ratino's version of events. He testified that he came out of the store after the incident and appellant told him that her car was rolling. In response to appellant's request for help, Ratino jumped in the car, and the car door hit appellant.[1]

E.D. Archuletta, a customer at the Giant, also testified for the defense.[2] As Archuletta was standing outside the store, he observed that appellant's car was moving. After Ratino shouted to appellant that her car was moving, Ratino went around the back of the car, entered the vehicle on the driver's side while the vehicle was moving, and stopped the car. In

---

1. In her testimony, appellant denied that she ever had a conversation with Schlossenberg about the accident.

2. The transcript reflects that Archuletta was called as a witness by counsel for appellees. It also indicates—apparently erroneously—that Archuletta was called by appellant.

the process, appellant was knocked to the ground by the passenger door of her car.

At the conclusion of the evidence, the parties discussed jury instructions with the court in chambers. Following the conference, appellant's counsel summarized his objections to the proposed instructions, on the record. In addition, appellant's counsel submitted a legal memorandum to the court addressing his objections to certain instructions requested by appellees.

Appellant sought an "intervening/superseding cause" instruction, arguing that Ratino's act of entering the vehicle and stepping on the accelerator constituted a superseding or intervening cause of the events, notwithstanding any negligence on appellant's part. Relying on the tripartite test described in *Yonce v. SmithKline Beecham Clinical Laboratories, Inc.*, 111 Md.App. 124, 151, 680 A.2d 569, *cert. denied*, 344 Md. 118, 685 A.2d 452 (1996), the trial court refused to give a superseding cause instruction. With respect to the issue of contributory negligence, appellant objected to any instruction concerning the unattended vehicle statute, Md.Code (1977, 1998 Repl. Vol.), § 21–1101 of the Transportation Article ("Trans."), especially in light of the court's refusal to give an intervening/superseding cause instruction. Nevertheless, the court approved appellees' request for a jury instruction concerning Trans. § 21–1101.

The following colloquy, which occurred in court, out of the jury's presence, is pertinent:

THE COURT: "To rise to the magnitude of a supervening cause which will insulate the original actor from liability, the new cause must, one, be independent of the original act." I don't think the evidence would justify that in this case.

"Second, adequate of itself to bring about the result, and three, one whose occurrence was not reasonably foreseeable to the original actor." I don't think this case meets that standard either.

The Court in its opinion, because of the failure of the evidence as a whole to meet two of the three elements, which would justify an instruction on supervening or superseding cause, based on the [*Yonce*] case, the clients [sic] [declines?] to give a superseding cause instruction.

[APPELLANT'S COUNSEL]: Your Honor, I also want to note an objection, if I may, to the Court's giving [a] contributory negligence instruction. I think by my request for [a] superseding cause instruction, that it does cancel out the need that may arise otherwise for a contributory negligence instruction.

I want to note the fact that I did object to it in chambers, and I do object to it now.

THE COURT: Very well. And I will just by way of closing say that the facts which plaintiff's counsel submits to support a supervening cause instruction—and that is Mr. Ratino jumping in the car and hitting the gas pedal—is not independent of the original act. It's all part of the same active transaction. It's not independent of the original act.

That said that it's also, number three, an element, that it was foreseeable to the original actor, that being Mrs. May. So for those reasons, I won't give the instruction.

In its instructions to the jury, the trial court stated, *inter alia:*

A reasonable person changes conduct according to the circumstances, and a danger that is known, or should be known. Therefore, if the foreseeable danger increases, a reasonable person acts more carefully.

To recover damages, or to be barred from recovery, the negligence must be a cause of an injury. There may be more than one cause of an injury. That is, several negligent acts may work together. Each person whose negligent act is a cause of an injury is responsible.

As to contributory negligence, a plaintiff cannot recover [if] the plaintiff's negligence is a cause of the accident. The defendant has the burden of proving by a preponderance of

the evidence that plaintiff's negligence was a cause of the accident.

And just two more, because I'm going to read you a statute in a moment. The violation of a statute which is a cause of plaintiff's injuries or damages is evidence of negligence.

And finally, Maryland Transportation Article, Section 21.1101, dealing with unattended motor vehicles, reads as follows: It's entitled Duty of a Driver upon Leaving Unattended Vehicle. "A person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set."

After instructing the jury, the court invited counsel to the bench, and appellant's counsel noted his exceptions. Subsequently, the jury was given a special verdict form containing four questions:

1. With regard to the Plaintiff's complaint of Negligence, do you find that the Defendant, Lewis Ratino, Jr., was negligent?

\* \* \* \*

2. Do you find that the Defendant's [sic] negligence was a proximate cause of the injury?

\* \* \* \*

3. Do you find that Florence May was contributorily negligent?

\* \* \* \*

4. In what amount, if any, do you award damages. . . .

\* \* \* \*

The jury answered yes to the first three questions and, consequently, did not reach the fourth.

We will provide additional facts in our discussion.

## Discussion

### I.

█ As this case involves issues of negligence, we repeat the essential elements of the tort: (1) a duty owed to the plaintiff; (2) a breach of that duty; (3) a causal connection between the breach of duty and the plaintiff's injury; and (4) damages. *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76, 642 A.2d 180 (1994); *Southland Corp. v. Griffith*, 332 Md. 704, 712, 633 A.2d 84 (1993); *Yonce*, 111 Md.App. at 136, 680 A.2d 569.

█ Even if a plaintiff proves that a defendant was negligent, a plaintiff is barred from recovery if the defendant establishes that the plaintiff was contributorily negligent. *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 451, 456 A.2d 894 (1983). " 'Contributory negligence is the neglect of the duty imposed upon all [individuals] to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances.' " *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 703, 705 A.2d 1144 (1998) (quoting *Campfield v. Crowther*, 252 Md. 88, 93, 249 A.2d 168 (1969)).

In this case, as we noted, the trial court permitted the jury to consider appellant's alleged violation of Trans. § 21–1101 as evidence of her contributory negligence. Trans. § 21–1101 provides, in pertinent part:

(a) *Duty of driver upon leaving unattended vehicle.*—... a person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set.[3]

---

**3.** We have applied the statute when the vehicle in question is in a parking lot that is accessible to the public. *See, e.g., Hartford Ins. Co. v. Manor Inn*, 94 Md.App. 225, 234, 617 A.2d 590 (1992), *aff'd*, 335 Md. 135, 642 A.2d 219 (1994). Nevertheless, neither we nor the Court of Appeals has definitively decided whether the statute applies to vehicles located on private property. *See id.; see also Manor Inn*, 335 Md. at

 The statute does not define the term "unattended." The purpose of the statute is primarily to protect the public "against a theft of or tampering with a motor vehicle and to prevent [vehicles] from moving under their own momentum should the brakes fail." *Liberto v. Holfeldt,* 221 Md. 62, 66, 155 A.2d 698 (1959). To be sure, a violation of the statute may be evidence of negligence, but "it is not *per se* enough to make a violator thereof liable for damages." *Id.* at 65, 155 A.2d 698; *see also Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 155, 642 A.2d 219 (1994); *Mackey v. Dorsey,* 104 Md.App. 250, 266, 655 A.2d 1333 (1995).

 Because she contends that her vehicle was not "unattended" within the meaning of the statute, appellant complains that the trial court erred in instructing the jury as to Trans. § 21–1101. Based on our analysis of cases that have construed the term "unattended" as it is used in the statute, coupled with the plain meaning of the term, we cannot conclude, as a matter of law, that appellant's unoccupied vehicle was either attended or unattended. In our view, the matter presented a factual issue for the jury to resolve. It follows that the trial court did not err in giving the instruction. We explain.

In *Lustbader v. Traders Delivery Co.,* 193 Md. 433, 67 A.2d 237 (1949), the Court determined that a driver of a delivery truck did not leave the vehicle unattended when a 17 year old occupant remained inside, even though the occupant did not have a driver's license and did not know how to drive. *Id.* at 438–40, 67 A.2d 237. The Court said:

> The statute does not define "unattended", but a reasonable interpretation is that it means without any one present who is competent to prevent any of the probable dangers to the public. These dangers are different under different circumstances. A car parked on the brow of a hill . . . where one danger is that it can start by the force of gravity, requires

155 n. 5, 642 A.2d 219 (observing that the issue was not before the Court). Although neither party has raised the issue, we believe that the statute is applicable to vehicles in a public parking lot.

attendance by one competent to stop it. On the other hand, where a car is not parked on a perceptible grade, the danger to be guarded against is the interposition of some human agency such as a mischievous child or a prospective thief. In such a case, the attendant would not have to be familiar with the mechanism or the operation of an automobile or the brakes.... The statute does not require a guarantee that a car cannot move or be moved to the damage of the public, but only that the reasonable precaution mentioned be taken. The person in charge of the car complies, so far as not leaving the car unattended, when he leaves with it a person who may be ordinarily capable of coping with the kind of emergencies that may be expected to arise under the particular circumstances of the case.

*Id.* at 439–40, 67 A.2d 237 (citation omitted).

*Hochschild, Kohn & Co. v. Canoles,* 193 Md. 276, 66 A.2d 780 (1949), is also instructive. There, the driver of an oil tank truck parked the vehicle on an inclined street in front of a customer's house. He left the engine running while he walked to the backyard of the customer's house to tighten the hose connection to the customer's oil tank. Although the truck rolled down the hill and crashed into the plaintiff's car, the truck driver argued that the oil truck was not "unattended." The Court disagreed, stating:

The appellant strenuously urges that the car was not unattended, because the driver in charge was back and forth. It would seem that this is answered by the result. He was so far away when the car started, that he could not reach it, and stop it. The truck was certainly, therefore, not attended by anyone who was able to prevent the very thing which the statute was intended to stop.

*Id.* at 284, 66 A.2d 780. Similarly, in *Liberto,* 221 Md. at 62, 155 A.2d 698, the automobile was considered to be unattended when the driver left it unoccupied for less than a minute, with the keys in the ignition, as she went into an animal hospital to get her dog.

*Collins v. Luper,* 12 Md.App. 109, 277 A.2d 445 (1971), is also noteworthy. There, when the driver and two passengers got out of the vehicle to urinate in some nearby bushes, the driver left the keys in the ignition. The driver's father then drove by and stopped to talk to his son. In the meantime, one of the occupants who had remained in the car got behind the wheel, drove off, and crashed into a pole, injuring one of the other occupants. Relying on *Lustbader,* we observed: "The term 'unattended motor vehicle' has been held to mean 'without anyone present [in the vehicle] who is competent to prevent any of the probable dangers to the public.'" *Id.* at 113, 277 A.2d 445 (alteration in original) (quoting *Lustbader,* 193 Md. at 439, 67 A.2d 237). Accordingly, we held that the car was not unattended, even though the remaining occupants were underage and apparently intoxicated. Of significance to us, the *Collins* Court did not hold that the determination of "unattended" turns on the occupancy *vel non* of the vehicle.

We are also guided by our recent decision in *Mackey,* 104 Md. App. at 250, 655 A.2d 1333. In that case, Dorsey was driving to work when he picked up Audrey Cooper, who had been wandering on the highway. Dorsey then stopped his car behind a police officer's vehicle in the median of the road and got out to ask for assistance. The officer told Dorsey to take Cooper to the hospital. When Dorsey returned to the car, it would not start. Consequently, he again exited the car, opened the hood, and, with the assistance of the police officer, checked the engine. Thereafter, Dorsey entered the car and successfully started it. While the engine was running, Dorsey got out of the car in order to close the hood. In the meantime, Cooper, who had remained in the vehicle the entire time, locked the door, pulled away, and collided with a bus that was parked across the street. The bus driver sued Dorsey for negligence, citing Trans. § 21–1101 as evidence of Dorsey's negligence. We upheld the trial court's decision granting summary judgment in favor of Dorsey.

In reaching that result, we observed that Cooper "very well could have been capable of preventing a third party from stealing the car." *Mackey,* 104 Md.App. at 268, 655 A.2d 1333.

There was no discussion, however, as to whether Dorsey left the vehicle "unattended" when he exited to close the hood. Instead, we assumed that Dorsey had left the vehicle unattended and held that Cooper's negligence was an intervening cause that broke the chain of causation initiated by Dorsey's act. *Id.* at 273, 655 A.2d 1333.

We are also mindful of what the Court said in *Hartford,* 335 Md. at 155, 642 A.2d 219: "[A] vehicle is effectively unattended when its operator is far enough away from it so as not to be able to prevent the occurrence at which the statute is directed." Nevertheless, we do not equate the term "unattended" with the term "unoccupied." Although the Legislature did not define the statutory term, we are confident that if the Legislature meant to equate "unattended" with "unoccupied," it would have said so.

It is true that the vehicles in *Lustbader, Collins,* and *Mackey* were not deemed "unattended" because they were occupied, even though one occupant was an unlicensed minor and another was a disturbed person who the driver did not even know. Further, we recognize that at least one jurisdiction has construed unattended to mean unoccupied. In *Ceen v. Checker Taxi Co.,* 42 Ill.App.3d 93, 355 N.E.2d 628, 631–32 (1976), the court held that a taxi driver violated the statute when he left the cab, with the motor running, to return a pair of shoes to a recent fare. Although there was a passenger in the cab when the driver got out of the car, the cabbie did not give any instructions to the passenger. When the cabbie returned, the cab was gone. It turned out that the passenger had stolen the cab and was later involved in an accident with the plaintiff, who then sued the cab company. In construing the term "unattended," the court stated:

> [T]he term "unattended" includes not only the situation where there is no one in the vehicle, but also where there is a person present, but that person cannot be trusted by the owner or is not responsible for watching over the vehicle or does not have immediate access to the vehicle's controls or

is not capable of operating the vehicle if that becomes necessary.

*Id.* 355 N.E.2d at 631–32.

On the other hand, in *Carpenter v. Miller*, 132 A.D.2d 859, 518 N.Y.S.2d 67 (1987), the court did not equate "unattended" with "unoccupied." There, the operator drove into a service station, pulled up to the pump island, got out of the car, and left the motor running while she went into the office to talk to the proprietor. The court held that the car was not "unattended" because a gas station attendant was "nearby waiting to fill the gasoline tank." *Id.* 518 N.Y.S.2d at 69.

■ In our view, the word "unattended" is not ambiguous; it does not mean "unoccupied."[4] It is well settled that words used in a statute are accorded " 'their ordinary and popularly understood meaning, absent a manifest contrary legislative intention.' " *Klingenberg v. Klingenberg*, 342 Md. 315, 327, 675 A.2d 551 (1996) (quoting *In re Arnold M.*, 298 Md. 515, 520, 471 A.2d 313 (1984)). When we interpret a statute with an undefined term, however, we sometimes consult a dictionary. *See Rouse–Fairwood Ltd. Partnership v. Supervisor of Assessments*, 120 Md.App. 667, 687, 708 A.2d 19 (1998); *Department of Assessments & Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 14, 702 A.2d 690 (1997). The word "attend" is defined, *inter alia*, as: "to pay attention to"; "to look after"; and "to be present with." *Merriam Webster's Collegiate Dictionary* 74 (10th ed.1997). The word "occupied" is defined, *inter alia*, as "to take up (a place or extent in space)." *Id.* at 804.

■ Clearly, appellant's vehicle was unoccupied. Moreover, the jury apparently believed that the car was moving. We also know that appellant did not stop the vehicle, nor did

---

4. The following example may help to illustrate this proposition. If a driver of an automobile starts the engine of his car on an icy, cold, winter morning, in order to warm the vehicle, and then, with the key in the ignition and the motor running, steps outside of the car to scrape ice from the windshield, the vehicle is obviously unoccupied but not unattended.

she keep Ratino from operating it. Nevertheless, we do not believe that appellant's failure or inability either to stop the car or to prevent Ratino from entering it necessarily compels the conclusion that the car was unattended. Stated otherwise, the determination of whether a vehicle was unattended cannot depend solely on the driver's ability to prevent an unfortunate occurrence. A driver's age, reflexes, knowledge that the car is even moving, and ability to respond quickly and calmly to exigent circumstances, are all factors that might affect one's capacity to stop an unattended or unoccupied, moving vehicle.[5] On the other hand, even if the vehicle is not unattended, a driver who fails to stop a moving vehicle may be negligent.

Reasonable precaution depends upon the factual circumstances of each situation. What the Court said in *Lustbader* is apt here: "The statute does not require a guarantee that a car cannot move or be moved to the damage of the public, but only that ... reasonable precaution ... be taken." *Id.*, 193 Md. at 439, 67 A.2d 237. In the context of this case, we are satisfied that it would not have been appropriate for the court to determine, as a matter of law, whether appellant's vehicle was unattended. Instead, we conclude that the evidence generated a factual question for the jury to resolve.

In this regard, we observe that Ms. May apparently was never more than a few feet away from her car. As appellant was hit by the passenger door of her car, she obviously was adjacent to it at that particular moment. Nevertheless, the evidence did not establish precisely how far appellant ventured from her vehicle when she endeavored to retrieve her groceries. We also note that a photographic exhibit of the parcel pick-up area depicts a barrier separating the parking lot from the area where customers enter and exit the store. Appellant may have walked several feet from the car, past the barrier, to get her groceries, and then returned to her car.

---

**5.** We also note that, in the recent past, the rash of carjackings made too clear that mere occupancy of a vehicle does not ensure that it will not be stolen.

Although appellant's counsel excepted to the instruction on the ground that it was not applicable, as a matter of law, he did not ask the court to construe the statute. To be sure, we believe that it would have been helpful to the jury if the instructions explained the term "unattended," so as to avoid any confusion with "unoccupied." *Cf. Green v. State,* 119 Md.App. 547, 562, 705 A.2d 133 (1998) (noting that the pattern jury instructions are not always adequate for every conceivable situation). Nevertheless, as appellant did not raise that issue below, or on appeal, it is not before us. Md. Rule 2–520(e); Md. Rule 8–131(a). What the Court said in *Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965), is pertinent here:

> Whether or not the defendants violated the Code depends upon a construction of its terms and a determination of the facts. The interpretation of a statute or ordinance is for the court. In this case, however, the trial judge was not requested to construe the provisions of the Fire Prevention Code, and no exceptions were taken to his failure to do so. Under these circumstances, the question of whether the Judge should have gone further than he did in his charge in respect of the meaning of the terms of the Code is not properly before us for decision.

*Id.* at 259, 206 A.2d 148 (citations omitted); *see also Kaffl v. Moran,* 233 Md. 473, 478, 197 A.2d 240 (1964) (concluding that asserted error on appeal that trial court erred in failing to define "unavoidable accident" was not preserved, even though appellant excepted at trial on ground that an unavoidable accident instruction was inappropriate); *Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 34, 606 A.2d 295 (same, regarding definition of "gross negligence"), *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992); *see also generally Fearnow v. Chesapeake & Potomac Tel. Co.,* 342 Md. 363, 378–81, 676 A.2d 65 (1996) (regarding preservation of jury instruction issues for appeal). Therefore, we hold that the trial court did not err in instructing the jury as to the unattended vehicle statute.

## II.

Appellant also contends that the trial court erred when it did not decide as a matter of law that she was not contributorily negligent, on the ground that her actions were not a proximate cause of the occurrence. Relying on *Collins, Mackey, Liberto,* and *Hartford*—cases in which the drivers' negligence resulting from a violation of Trans. § 21–1101 was held not to be the proximate cause of the injuries to the plaintiffs—appellant asserts that Ratino's conduct constituted an intervening or superseding cause of the occurrence.

■ Proximate cause consists of two elements: (1) cause in fact and (2) legally cognizable cause. *Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 51, 656 A.2d 307 (1995); *Hartford,* 335 Md. at 156, 642 A.2d 219; *Yonce,* 111 Md.App. at 137, 680 A.2d 569. The focus of appellant's argument is on the second element: legal causation. She posits that Ratino was unauthorized to operate her vehicle, and the accident occurred because of Ratino's unauthorized conduct and the manner in which he operated her vehicle. Further, she avers that the consequences were "highly extraordinary." *See Hartford,* 335 Md. at 160, 642 A.2d 219; *see also Restatement (Second) of Torts* §§ 435, 447 (1965). Therefore, she urges that her conduct was not the proximate cause of the occurrence.

■ Ordinarily, the question of whether causation is proximate or superseding is a matter to be resolved by the jury. Only if the evidence can lead to no other conclusion, can the matter be decided as a matter of law. *See Lane,* 338 Md. at 52–53, 656 A.2d 307; *Suburban Trust Co. v. Waller,* 44 Md.App. 335, 347, 408 A.2d 758 (1979). Moreover, if there is a conflict in the evidence regarding the material facts relied upon to establish contributory negligence, or if more than one inference may be drawn from those facts, contributory negligence is an issue for the trier of fact to resolve. *Flippo,* 348 Md. at 703, 705 A.2d 1144; *Reiser v. Abramson,* 264 Md. 372, 377–78, 286 A.2d 91 (1972). The issue of contributory negligence cannot be taken from the jury unless no reasonable

person could reach a contrary conclusion. *Campbell v. Baltimore Gas & Elec. Co.*, 95 Md.App. 86, 94, 619 A.2d 213, *cert. denied,* 331 Md. 196, 627 A.2d 538 (1993); *see Flippo*, 348 Md. at 703, 705 A.2d 1144.

A person will not be relieved of liability for a negligent act if, at the time of that act, the person "should have foreseen the 'general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the [person's] negligence." *Yonce*, 111 Md.App. at 139, 680 A.2d 569 (quoting *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 337, 624 A.2d 496 (1993)). Both *Hartford* and *Yonce* considered *Restatement (Second) of Torts* (1965) on the question of foreseeability of harm. Section 435 provides:

Foreseeability of Harm or Manner of Its Occurrence

(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

(2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

Comment (e) to § 435 of the *Restatement* states:

It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is or is not so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced.

*Restatement (Second) of Torts* § 435 cmt. (e) (1965); *see also Yonce*, 111 Md.App. at 139–43, 680 A.2d 569.

Further, § 447 of the Restatement provides:

Negligence of Intervening Acts

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that the third person might so act, or

(b) a reasonable [person] knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*See Hartford,* 335 Md. at 157 nn. 6–7, 642 A.2d 219; *Yonce,* 111 Md.App. at 148–49, 680 A.2d 569.

With respect to the issue of contributory negligence, *Collins, Liberto, Mackey,* and *Hartford* are again instructive. Each involved an unauthorized operator of a motor vehicle and a subsequent accident.

In *Collins,* we determined, as we noted, that the vehicle was not "unattended," even though the driver left the car to urinate in the bushes. We also held that the driver's actions were not the proximate cause of the injuries to the plaintiff, who was hurt when an occupant of the vehicle got behind the wheel and sped off, crashing into a pole. We stated: "We think it plain beyond any question that the sole proximate cause of [the plaintiff's] injuries was the independent, unexpected, extraordinary negligent action of [the occupant] in suddenly driving off in the Collins' vehicle and striking a utility pole." *Collins,* 12 Md.App. at 115, 277 A.2d 445.

In *Mackey,* as we described above, the occupant of the car unexpectedly drove off with the vehicle while the owner was closing the hood. We concluded that the owner's negligence, if any, was not the proximate cause of the accident. We explained:

While we do not believe that, under the unique circumstances of the present case, it was foreseeable that Ms. Cooper would attempt to slide under the wheel and drive the car away, even if we were to assume otherwise, the negligent manner in which she drove the car was not foreseeable. Her negligence was an independent intervening event that broke the chain of causation initiated by Dorsey. Dorsey's act of leaving his keys in the ignition, although potentially a violation of the unattended motor vehicle statute and perhaps negligent itself, was not, as a matter of law, the proximate cause of appellants' injuries.

*Mackey,* 104 Md.App. at 272–73, 655 A.2d 1333.

Similarly, in *Liberto,* 221 Md. at 66, 155 A.2d 698, the owner of the car left it parked with the key in the ignition when she went to get her dog from an animal hospital. In the brief interim, the car was stolen. Five days later, the vehicle was involved in an accident. Nevertheless, the Court held that the owner was not liable. It reasoned:

> The violation of the statute must be the proximate cause of the injury, and if he fails to prove that fact, the plaintiff cannot sustain his cause of action. Again, we agree with the majority of courts and hold that in this case the negligence of the defendant was not the proximate cause of the injury both on the basis that it was not foreseeable that the thief would be involved in an accident five days later and that the negligence of the thief was an independent intervening cause which was in fact the proximate cause of the accident.

*Id.* at 67, 155 A.2d 698 (citation omitted).

In *Hartford,* an employee of the Manor Inn in Bethesda left the keys in the ignition of a laundry van parked outside the room of a patient who had escaped from a State operated facility for the mentally ill and was staying at the Inn.[6] The patient stole the van, and about thirty minutes later crashed

---

6. The escaped patient had been taken to the facility by Montgomery County police officers, who thought he was homeless. The officers did not know that the patient was an escapee from a facility for the mentally ill.

into the plaintiff's car. The plaintiff's insurer sued the State and the Inn. The Court stated:

> [W]hile the negligence of Manor Inn clearly was the proximate cause of the theft of the van, it does not follow that that causal relationship continued from the moment of the theft to the moment of the impact between the van and [the plaintiff's] car. [The patient's] conduct in taking the van was not "highly extraordinary"; indeed, it was highly predictable. On the other hand, the manner in which he drove the van, and its consequences, were "highly extraordinary."

*Hartford,* 335 Md. at 160, 642 A.2d 219.

As we see it, appellant glosses over appellees' contention, which was supported by several witnesses, that appellant's unoccupied vehicle was moving, and Ratino entered the car and attempted to stop it *at appellant's request.* Moreover, if the unoccupied vehicle was moving, appellant ignores that the situation created an obvious danger to persons in its path. It would not be "highly extraordinary" for someone in Ratino's position mistakenly to step on the accelerator while hurriedly trying to stop an unoccupied, moving vehicle in the immediate vicinity of an area frequented by the store's customers. Therefore, the facts here provided a sufficient basis to place the issue of contributory negligence before the jury. Accordingly, we hold that appellant was not entitled to judgment as a matter of law with respect to the issue of contributory negligence.

### III.

Appellant next argues that even if she was not entitled as a matter of law to a finding that she was not contributorily negligent, the trial court nonetheless erred in refusing to give a specific jury instruction on "intervening/superseding cause."

If a party requests a particular jury instruction, the court is obligated to instruct the jury as to that party's theory of the case, provided the requested instruction is supported by the facts in evidence and not otherwise adequately covered by other instructions. Md. Rule 2–520; *Sergeant Co. v. Pickett,*

285 Md. 186, 193, 401 A.2d 651 (1979); *Mallard v. Earl*, 106 Md.App. 449, 469, 665 A.2d 287 (1995). When we review a trial court's refusal to give a requested jury instruction, we must determine: (1) whether the instruction was a correct exposition of the law; (2) whether the law was applicable in light of the evidence presented to the jury; and (3) whether the substance of the refused instruction was fairly covered by the other instructions that were given. *Rustin v. Smith*, 104 Md.App. 676, 679–80, 657 A.2d 412 (1995); *E.G. Rock, Inc. v. Danly*, 98 Md.App. 411, 421, 633 A.2d 485 (1993). If the requested instruction is not supported by the evidence in the case, it should not be given. *Rustin*, 104 Md.App. at 680, 657 A.2d 412; *Moats v. Ashburn*, 60 Md.App. 487, 493, 483 A.2d 791 (1984).

In this case, the trial court applied the tripartite test that we considered in *Yonce*, 111 Md.App. at 151, 680 A.2d 569, which involved a wrongful death claim. The test, which we borrowed from an Oklahoma case, provides:

> To rise to the magnitude of a *supervening* cause, which will *insulate* the original actor from liability, the new cause must be *(1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable to the original actor.*

*Id.* at 151, 680 A.2d 569 (quoting *Graham v. Keuchel*, 847 P.2d 342, 348 (Okla.1993)). The trial court then determined that, based on the evidence, Ratino's act of stepping on the gas pedal (1) was not independent of appellant's original act and (2) was foreseeable to appellant.

Appellant contends that there is nothing in our *Yonce* decision to indicate that we adopted the tripartite test to determine superseding causes and, even if it is applicable, it ignores appellant's theory of the case and the evidence she presented. According to her testimony, she stopped the car, placed it in park, applied the parking brake, and left the engine running while she got out and walked around the car to load her groceries. She also testified that Ratino entered her car without authorization and stepped on the accelerator in-

stead of the brake. As a result, appellant, who was holding the front passenger door handle, was knocked to the ground and injured. Based on this theory, appellant contends that a reasonable jury could conclude that Ratino's action superseded any negligence on her part.

Appellant cites no Maryland authority indicating that the doctrine of intervening and superseding negligence applies to the alleged act of primary negligence to defeat a contributory negligence claim by a defendant. *Cf. Myers v. Alessi,* 80 Md.App. 124, 135, 560 A.2d 59, *cert. denied,* 317 Md. 640, 566 A.2d 101 (1989) ("The doctor's act of primary negligence may not be used again to serve as the last clear chance of avoiding injuries."). Indeed, the doctrine is usually asserted by a defendant to avoid liability when damages are caused by a third party or an entirely unforeseeable force. *See, e.g., Hartford,* 335 Md. at 160, 642 A.2d 219; *see also Restatement (Second) of Torts* § 440 (1965) ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.").

The *Hartford* Court stated the test for a superseding cause:

" 'If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.' "

*Id.* (quoting *Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. 116, 131, 591 A.2d 507 (1991) (quoting *State v. Hecht Co.,* 165 Md. 415, 422, 169 A. 311 (1933))). Thus, in the case *sub judice,* the question of whether Ratino's conduct superseded appellant's would come down to a measure of foreseeability under the circumstances. If appellant's injury was a foreseeable risk of any negligence on her part, she was contributorily negligent and Ratino's negligence did not constitute an intervening and superseding cause of her injury.

*Rawl v. United States,* 778 F.2d 1009 (4th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986), a case applying South Carolina law, is instructive. There, a pilot crashed his small plane while flying at night in deteriorating weather conditions, of which he knew or should have known before taking off. Moreover, the pilot was not certified to fly by instrument. While attempting to land, there was a miscommunication between the pilot and the control tower, which led to the pilot suffering "spatial disorientation," "a condition caused by conflicts between a pilot's visual references and inner sense of orientation in space," *id.* at 1012 & n. 5, resulting in the crash. The trial court concluded that the control tower was negligent and rejected the government's defense of contributory negligence, on the ground that the control tower's negligence was an intervening or superseding cause of the crash. On appeal, the Fourth Circuit addressed the unusual posture of the trial court's application of the superseding and intervening cause doctrine:

> The problem of whether the superseding and intervening negligence theory is available only for the benefit of defendants may, however, be simply no more than a matter of labels, for the doctrine of intervening and superseding negligence is very similar to a rule of law which allows a plaintiff to avoid the consequences of contributory negligence by showing that his own negligence did not proximately cause the injury he suffered. Thus, contributory negligence will not bar recovery where the plaintiff can show that his own conduct did not expose him to a foreseeable risk of the particular injury that in fact occurred through the negli-

gence of the defendant. The doctrine has been characterized in terms of lack of proximate cause: if the harm that occurred was not a foreseeable hazard of plaintiff's negligence, the plaintiff may recover from defendant. The proximate cause of the injury was the defendant's intervening negligence, and the causal connection between the plaintiff's negligence and the injury was broken.

*Id.* at 1015 n. 11 (citation omitted).

■ The appellate court assumed that the doctrine applied and concluded that the hazard of spatial disorientation was foreseeable in light of the circumstances of the case, and that the result—crash and death—were also foreseeable. Thus, the appellate court reversed, holding that the control tower's negligence was not a superseding cause and that the pilot's estate was barred under the doctrine of contributory negligence. We agree with the *Rawl* court that for purposes of contributory negligence, the issue of whether the defendant's act of primary negligence constitutes an intervening or superseding cause is properly analyzed as a question of proximate causation and foreseeability. *See also Lane,* 338 Md. at 52, 656 A.2d 307 ("Essentially, the intervening negligence is not a superseding cause if it is reasonably foreseeable.").

■ In its charge to the jury, the trial court gave a general proximate cause instruction as it relates to negligence and contributory negligence. Therefore, because the substance of appellant's requested instruction was fairly covered by the court's proximate cause instruction, we hold that the trial court did not err in refusing to give an intervening/superseding cause instruction. We also observe that appellant's argument may be more aptly characterized under the doctrine of last clear chance. Nevertheless, appellant did not request a last clear chance instruction, nor would it appear to be applicable in this case. *See Benton v. Henry,* 241 Md. 32, 35, 215 A.2d 226 (1965); *Myers,* 80 Md.App. at 135, 560 A.2d 59.

**JUDGMENT AFFIRMED;**

**APPELLANT TO PAY COSTS.**